Judianne WACASTER *v.* Charles DANIELS
Director of Labor

E 80-51                                                        603 S.W. 2d 907
Court of Appeals of Arkansas
Opinion delivered September 10, 1980

Appellant, *pro se*.

*Herrn Northcutt*, for appellee.

GEORGE HOWARD, JR., Judge. The central issue for determination is whether claimant refused, without good cause, a position — which did not offer the equivalent pay or hours of a prior position she held with respondent — thus, disqualifying her for unemployment benefits for a period of eight weeks.

The pertinent facts, which are not really in dispute, are:

Claimant was employed by the West Memphis City Library as an assistant librarian prior to December 31, 1979; she was required to work from 10:00 a.m. to 4:00 p.m. on Mondays, Tuesdays, Thursdays and Fridays and from 12:30 p.m. to 5 p.m. on Saturdays, with one Saturday off each

month and was required to work four and one-half hours on the first Wednesday of each month, aggregating a total of 28 and 1/2 hours per week; and she received a monthly salary of $560.00. On Saturday afternoons, claimant's husband baby-sat while she worked.

On December 14, 1979, claimant was advised by letter that the position of assistant librarian would be terminated, effective December 31, 1979, as a "result of the City's financial condition."

Early in 1980, claimant made application for unemployment benefits. The local office of the Employment Security Division denied claimant benefits on the grounds that she was ineligible for benefits under Ark. Stat. Ann. § 81-1106(c) because she had refused an offer of available and suitable work without good cause. The claimant appealed the decision to the Appeals Tribunal. A hearing was held on March 4, 1980, and the Appeals Tribunal affirmed the action of the local office on March 13, 1980. On March 31, 1980, the Board of Review affirmed the decision of the Appeals Tribunal.

Section 81-1106(c), in relevant part, provides:

". . . [A]n individual shall be disqualified for benefits:

. . .

"(c) Failure to work. If he has failed without good cause (1) to apply for available, suitable work when so directed by an Employment Security Division Office or (2) accept available, suitable work when offered. Such disqualification shall be for eight [8] weeks of unemployment. . . .

. . .

"(1) In determining whether or not any work is suitable for an individual . . . there shall be considered among other factors, . . . the degree of risk in-

involved in his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, the customary occupation, the distance of available work from his residence and prospects for obtaining local work."

After claimant had made aplication for unemployment benefits, claimant was offered the position of "Children's Librarian/Assistant Librarian" at the West Memphis Public Library where she was employed previously. This position was made available after additional funds were found to fund it. It is conceded that the position was temporary while her former position was characterized as a full-time one.

The temporary position involved a work week of 32 hours — 11:00 a.m. to 6:00 p.m. on Mondays, Tuesdays, Thursdays and Fridays, and from 12:00 a.m. to 4:00 p.m. every Saturday — while claimant's previous position required only 28 and 1/2 hours weekly — 10:00 a.m. to 4:00 p.m. on Mondays, Tuesdays, Thursdays and Fridays and from 12:30 p.m. to 5:00 p.m. on Saturdays, except claimant received one Saturday off per month, but was required to work four and one-half hours on the first Wednesday of each month.

The pay under the temporary position was approximately $560.00 per month plus a 7% cost of living index increasement which all city employees were entitled to receive. In other words, under the temporary position, claimant was required to work approximately three and one-half hours per week longer than she worked previously for essentially the same salary since the 7% pay increase was afforded to all city employees.

Claimant rejected the temporary position contending the position was not suitable for the following reasons:

1. Claimant would be required to work three and one-half extra hours each week without a corresponding wage increasement; and,

2. The position was temporary rather than full-time; and

3. Under the temporary position she would be required to work each evening until 6:00 p.m. as compared to 4:00 p.m. previously; and,

4. She would be required to work every Saturday; and,

5. Under her prior employment, her husband baby-sat on Saturdays, but her husband is now self-employed and, consequently, is unavailable to baby-sit and she would have to employ a baby-sitter.

Before discussing the merits of claimant's posture in this proceeding, we deem it advisable to mention briefly the purpose and the legislative intent of the Employment Security Law.

Unemployment compensation laws were enacted, during the great depression of the 1930's, to provide a reasonable and effective means for the promotion of economic security and to assist financially those employees who are involuntarily unemployed because of the reduction of an employer's work force due to adverse economic conditions. These measures are not designed to penalize employers or reward employees, but to promote the common good or general welfare of the State. More particularly, the goal is to provide protection for employees who are able to work, available for work, but cannot find work.

The Arkansas General Assembly in articulating this humane and beneficient purpose, made the following observation in expressing the legislative intent in adopting Arkansas' Employment Security Law:

". . . Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which may fall with crushing force upon the unemployed worker and his family. The achievement of social security requires

protection against this great hazard of our economic life. This can be accomplished by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. . . ."

Turning now to the immediate question before us: whether claimant was justified in refusing to accept the temporary position of "Children's Librarian/Assistant Librarian", we are persuaded, when considering the overall purpose and objective of the Employment Security Law, she was not.

Unemployment benefits are not for those individuals who are voluntarily unemployed or incapable of working due to illness or family responsibilities which preclude them from accepting employment within their capabilities.

The duty and obligation of an unemployed individual, who had made application for benefits, to accept available and suitable work may exist regardless of whether the work is temporary employment or full-time employment. Moreover, suitability of work does not require that the job offered must be equal in every respect to the prior working conditions, that the pay be equal to or better than the previous wage scale.

The only condition that warrants a claimant from accepting offered employment is for good cause as expressed in the applicable statutory provision. While the term "good cause" may be difficult to define, it seems plain that the term means a justifiable reason for not accepting the particular job offered. In other words, to constitute good cause, the reason for refusal must not be arbitrary or capricious and the reasons must be connected with the work itself. While personal factors may be considered in determining whether there is good cause, they are not controlling or dispositive of the issue. *See:* 81 C.J.S., Social Security, § 255, p. 508.

In the final analysis, the question of what is good cause

must be determined in the light of the facts of each case.

While it is true that claimant, under the temporary position, would have been required to work an additional three and one-half hours per wek or fourteen additional hours per month and would have received the same salary that she received previously, plus a 7% cost of index raise of $39.20 in-increasement per month, we hold that there is a relatively insignificant differential in the increasement in the number of hours and the salary that she would have received under the temporary employment when contrasted with the working conditions of her previous position.

Under the temporary assignment, claimant would have been doing essentially the same type of work that she had done previously for the same employer; the position did not necessitate a change in residence or involve a greater distance to travel.

Claimant is required, under the law, to be available for work whether temporary or full-time in order to receive benefits. She has the burden of proof to show that she has met the conditions of unrestricted availability for work. It is clear that a claimant may not restrict his availability to certain hours, types of work or other conditions not usual or customary in the particular trade. *See:* 76 Am. Jur. 2d, Unemployment Compensation, § 68, p. 970.

Affirmed.