REYNOLDS METALS COMPANY *v.* Milton COUCH,
David BATES, James DICKEY, Sr., and William F.
EVERETT, Director of Labor

E 82-211 648 S.W.2d 497

Court of Appeals of Arkansas
Opinion delivered March 23, 1983
[Rehearing denied April 20, 1983.*]

*COOPER, J., would grant rehearing.

38

 

*Wright, Lindsey & Jennings,* for appellant.

*Youngdahl & Larrison,* by: *Jay Thomas Youngdahl,* for appellees Couch, Bates and Dickey.

*Alinda Andrews,* for appellee Everett.

DONALD L. CORBIN, Judge. On September 3, 1981, management at the Reynolds Metals Company's Jones Mill aluminum production facility was informed by its superiors that, due to a decline in the market for aluminum products, two "pot lines" were to be shut down. Because of this, 186 production employees were laid off by Reynolds. On November 2, 1981, an additional "pot line" was ordered closed and 166 additional production employees were laid off. This reduction in production resulted in corresponding cutbacks in the maintenance department. On January 4, 1982, management posted a notice containing the names of 17 maintenance employees who would be affected by the reduction. Claimants in this case were among the affected employees. Pursuant to a contract between the employer and the union, senior employees affected by the reduction were given the choice of "bumping" into a lower job classification or taking a lay-off. At the time of the lay-off two of the claimants were welders and one was a millwright, each with an hourly wage rate of $13.00. If they had chosen to "bump" into a lower job classification, each would have been assigned to the "pot line" labor pool where their effective rate of pay would have been $12.35 an hour. The claimants chose not to avail themselves of their "bumping rights" and on January 11 they were laid-off. They each subsequently filed claims for unemployment benefits.

Benefits were awarded by the agency and the employer appealed to the Appeal Tribunal. The Appeal Tribunal

affirmed the agency's award of benefits on the ground that the claimants had been discharged from their employment for reasons other than misconduct. The employer appealed this decision to the Board of Review. The Board of Review affirmed the decision of the Appeal Tribunal holding that the claimants were affected by the reduction in work force of January, 1982, and thus the case was controlled by our decision in *Terry* v. *Director of Labor,* 3 Ark. App. 197, 623 S.W.2d 857 (1981).

The question before this court is whether an employee is "voluntarily" unemployed or whether he is discharged by the employer if, in accordance with the seniority provisions of a collective bargaining agreement, he is offered a transfer when his present work is eliminated and he refuses such transfer and leaves the service of the employer. If the claimant was discharged from his last work for reasons other than misconduct, was he offered suitable work, which he refused, thus disqualifying him from benefits under Section 5 (c) [Ark. Stat. Ann. § 81-1106 (c)]; or alternatively, if the claimant voluntarily left his last employment, did he have good cause to do so under Secton 5 (a) [Ark. Stat. Ann. § 81-1106 (a)]. We recognize that in either situation, Ark. Stat. Ann. § 81-1106 (c) (1) and (2) are applicable. Ark. Stat. Ann. § 81-1106 (c) provides in part:

> (1) In determining whether or not any work is suitable for an individual and in determining the existence of good cause for voluntarily leaving his work under subsection (a) of this section, there shall be considered among other factors, and in addition to those enumerated in paragraph (2) of this subsection, the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, the length of his unemployment, his prospects for obtaining work in his customary occupation, the distance of available work from his residence and prospects for obtaining local work.
>
> (2) Notwithstanding any other provisions of this Act, no work shall be deemed suitable and benefits shall not be denied under this Act to any otherwise eligible

individual for refusing to accept new work under any of the following conditions:

. . .

(b) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.

Appellant contends that the claimants voluntarily quit their last work without good cause connected with the work in that they rejected suitable work which was offered to them by the employer. Appellant argues that the Board of Review erred in holding that the suitability of the alternative work offered was not a question to be resolved under the present fact situation. We have to agree with the appellant's contention on this point.

In *Terry* v. *Director of Labor, supra,* we relied upon a per curiam decision by our predecessors on the Arkansas Court of Appeals in *Jackson* v. *Daniels,* 267 Ark. 685, 590 S.W.2d 63 (1979), which we now recogize involved a different situation than in *Terry* and the case now before us. We believe a reversal of our position in *Terry, supra,* is necessary. We do not believe that good cause to refuse work which is otherwise suitable exists merely because the employee's acceptance of the offered position will result in the discharge of a fellow employee of less seniority. See *Wallace* v. *Sullivan,* 561 S.W.2d 452 (Tenn. 1978). We also do not believe that a private agreement between an employee and an employer can affect the eligibility of the employee for unemployment benefits. To hold that by private agreement one who refuses reasonable employment is entitled to unemployment benefits would make his eligibility dependent upon negotiations between the employer and the employee or his bargaining agent rather than on the statute. See *Roberts* v. *Chain Belt Co.,* 2 Wis.2d 399, 86 N.W.2d 406 (1957); *Johns-Manville Prod. Corp.* v. *Board of Review,* 122 N.J. Super. 366, 300 A.2d 572 (1973). An employee and employer cannot contract eligibility to unemployment compensation; the employee must come within the provisions of the statute to be eligible. Since we did not directly address the suitability of the offered work in *Terry,* we feel that it is an issue to be considered under this fact situation.

Appellees argue that the suitability of the work was not at issue because the agency does not judge the suitability of work offered claimants until after claimants have filed a claim for unemployment benefits. We find no merit in this argument. A claimant is not allowed to reject suitable employment and still remain eligible for unemployment compensation benefits simply because he has not yet filed a claim for them. The suitability of work offered unemployed claimants becomes an issue as soon as the claimant is unemployed.

Appellees also argue that if suitability of the positions offered is at issue, the claimants should be allowed benefits because the jobs offered in the case at bar were not suitable. The record contains evidence that the positions offered the claimants were laborer positions in the "pot rooms" and the "rodding rooms". It appears that these positions were considered some of the most undesirable jobs in the plant because of the intense heat to which the workers were subjected, because of the fumes inherent in the work, as well as the amount of heavy lifting involved in performing the work. One claimant testified that he rejected the position offered because the work was physically demanding and involved sometimes lifting around 80,000 pounds of dead weight a day. The evidence shows that the "pot room" jobs would have also involved a slight decrease in pay to the claimants.

The Arkansas Supreme court dealt with the suitability of offered work under similar circumstances in *Ladish Co.* v. *Breashears,* 263 Ark. 48, 563 S.W.2d 419 (1978). In that case claimant had been offered a lower paying job after his previous job had been eliminated due to a reduction in work force by the employer. There, the Supreme Court held: "Before work calling for less competence and lower remuneration can be found to be suitable, a claimant is entitled to a reasonable length of time in which to find work at his higher skill." The Supreme Court in *Ladish Co.* v. *Breashears, supra,* followed the Connecticut Supreme Court's decision in *Dubkowski* v. *Administrator,* 150 Conn. 278, 188 A.2d 658 (1963). In *Dubkowski,* the court said:

"To force a worker to accept a job at less than his highest skill at the peril of losing his unemployment compensation might result in the loss of this skill and is economic waste which should be avoided as long as there is a reasonable probability of its not being necessary." Freeman, op cit, 55 Yale LJ 123, 127. "It seems reasonable, therefore, that work at a lesser skill and lower wages should not be deemed suitable unless a claimant has been given a reasonable period in which to compete in the labor market for available jobs at his higher skill or related skills. . . . " Menard, "Refusal of Suitable Work," 55 Yale LJ 134, 142 . . . .

Decisions of other jurisdictions are apparently in accord with this view: *Re Troutman,* 264 N.C. 289, 141 S.E.2d 613 (1965), *Pacific Mills* v. *Director of Division of Employment,* 322 Mass. 345, 77 N.E.2d 413 (1948), *Bayly Manufacturing Co.* v. *Dept. of Employment,* 155 Colo. 433, 395 P.2d 216 (1964), *Hallahan* v. *Riley,* 94 N.H. 48, 45 A.2d 886 (1946), *Broadway* v. *Bolar,* 29 So.2d 687 (Ala. 1947), *Guillard* v. *Dept. of Employment,* 100 Idaho 647, 603 P.2d 981 (1979), *Grace* v. *Maine Employment Sec. Comm.,* 398 A.2d 1233 (Me. 1979).

It appears from the record that claimants may have been justified in rejecting the offered work as unsuitable. Claimants were skilled workers and were reluctant to accept positions of less pay, requiring fewer skills and involving harsher working conditions. It is evident that the skills claimants possessed could possibly have been utilized by other employers in the Garland County vicinity. Jobs paying even less than the offered jobs which involved better working conditions may have been more acceptable to the claimants and certainly working conditions substantially less favorable to an individual than those prevailing for similar work in the locality is one factor to consider. [Ark. Stat. Ann. § 81-1106 (c) (2)].

We remand the Board of Review's decision in this case. The Board of Review should, in keeping with our holding of this date, consider the issue of suitability of the work offered.

In *Terry* v. *Director, supra,* there was no evidence in the record as to whether the offered work was still available after claimant had been given a reasonable length of time to find other work. Here, the record contains evidence that the three positions available to claimants were still available on the date of the Appeal Tribunal hearing, March 18, 1982, approximately 10 weeks after claimants were informed that they would be losing their positions. If the Board of Review finds that the offered work was unsuitable at the time offered, it must then decide whether a reasonable length of time passed so as to make the work offered claimants in this case suitable. *Price* v. *Everett,* 2 Ark. App. 98, 616 S.W.2d 766 (1981); *Price* v. *Director of Labor,* 4 Ark. App. 341, 631 S.W.2d 22 (1982); *Wallace* v. *Sullivan, supra.*

Remanded.

GLAZE, J., concurs.

COOPER, J., concurs in part and dissents in part.

JAMES R. COOPER, Judge, concurring in part, dissenting in part. In the case at bar, the Board of Review found that the appellees were discharged from their work with the appellant for reasons other than misconduct connected with the work. Therefore, this case is distinguishable from *Jackson* v. *Daniels,* 267 Ark. 685, 590 S.W.2d 63 (1979), *Terry* v. *Director of Labor,* 3 Ark. App. 197, 623 S.W.2d 857 (1981), and *Ladish Co.* v. *Breashears,* 263 Ark. 48, 563 S.W.2d 419 (1978), in that these cases dealt with a finding by the Board of Review that the respective claimants had voluntarily quit without good cause connected with the work. Thus, under the fact situations presented in the three cases cited above, it was proper for the Board to consider the suitability of offered work in determining whether the claimants had good cause to quit.

The case at bar, however, does not involve a voluntary quit, but involves our consideration of the finding that the appellees were discharged for reasons other than misconduct. Rather than looking at this case on the basis on which it is before us, *i.e.,* a discharge for reasons other than

misconduct case, the majority has chosen to view it both in that manner and as if the appellees voluntarily quit their last work. Then the majority has gone on to discuss the suitability of the work offered, on the theory that the suitability of the work offered test applies equally to voluntary quit cases and discharge cases. I do not believe the question of whether the employees voluntarily quit or whether they had good cause to quit is before this Court, except as we may consider those questions in determining whether there is substantial evidence to support the findings of the Board of Review. The Board, as already noted, found that the appellees were discharged, for reasons other than misconduct, and I find substantial evidence to support such a finding. The employer clearly initiated the separation. Therefore, I would affirm the Board on that point.

I am unable to agree, however, with the Board's finding that *Terry* v. *Director of Labor* holds that the appellees are automatically entitled to benefits because of an initial finding of eligibility. Arkansas Statutes Annotated § 81-1106 (Repl. 1976) provides that certain actions on the part of a claimant may result in his disqualification for benefits. One manner in which an otherwise eligible claimant may become disqualified is by refusing to accept suitable work. Whether offered work is suitable is a question of fact for the Board. My disagreement with the majority opinion is in its holding that, in discharge cases, the suitability question can arise simultaneously with regard to determination of eligibility. A discharged worker may fail to seek work, or refuse suitable work, with no effect whatsoever on a later application for unemployment benefits. But an otherwise eligible claimant, who has applied for benefits, may be disqualified if he refuses to accept suitable work, or to seek work. An offer of work, suitable or otherwise, is irrelevant to a determination of initial eligibility in a discharge case.

I agree that the case should be remanded to the Board of Review so that it can determine whether, after otherwise qualifying for unemployment benefits, the appellees were or were not disqualified under Ark. Stat. Ann. § 81-1106 (c) (2).

I would affirm the Board of Review's finding that the appellees were discharged for reasons other than misconduct, but I would remand for a determination as to whether or not the appellees refused suitable work after they were determined to be eligible.

Although *Terry* v. *Director of Labor, supra,* may be wrong, we need not reach that issue in order to decide the case at bar since, as noted above, it involved a voluntary quit rather than a discharge.