Gloria BILLINGS, *et al.* *v.* DIRECTOR, Employment Security
Department; and Southwestern Bell

E 02-239 133 S.W.3d 399

Court of Appeals of Arkansas
Divisions II, III, and IV
Opinion delivered December 3, 2003

*James Edward Nickels*, for appellants.

*Allan Pruitt* and *Phyllis Edwards*, for appellee Director, Arkansas Employment Security Department.

*Cynthia A. Barton* and *H. Edward Skinner;* and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Hermann Ivester*, for appellee Southwestern Bell Telephone, L.P.

ROBERT J. GLADWIN, Judge. Following its determination that a force reduction was necessary, Southwestern Bell began its internal informal surplus proceedings in which employees with the most seniority were offered the opportunity to sign up for a voluntary severance package (hereinafter, "VSP"). Appellants accepted the VSP and took a sum of money approximately equal to one year's salary. They then filed claims for unemployment benefits. The Appeal Tribunal affirmed the Department's determination that appellants were eligible for benefits. The Board of Review, however, reversed that decision because it found that appellants had voluntarily left their work without good cause connected with the work. On appeal to this court, appellants argue that substantial evidence does not support the Board's decision. We disagree and affirm.

According to the area manager Rick Barteau, the VSP was offered based on seniority, with the employee with the highest seniority receiving the first right of refusal. The offer would then be extended to the employee with the next highest seniority and would continue down the list until the surplus was removed. Appellants' testimony collectively indicated that appellee had suggested that if there were not enough volunteers for the VSP, the employees with the least seniority would be laid off in order to eliminate the surplus. Both the area manager and appellants testified that appellants were not in any danger of losing their jobs, given their seniority.

In reversing the award of benefits, the Board noted that appellants had to first voluntarily apply for the VSP and then accept it once an offer was made by appellee. The Board found that appellants' jobs were clearly suitable for them because the work would have been a continuation of the jobs they were already performing. The Board also found that appellants were not in imminent danger of losing their jobs. Because appellants had control over whether their employment continued, the Board concluded that they were not entitled to unemployment benefits.

■■ The findings of the Board of Review are conclusive if they are supported by substantial evidence. *Walls v. Director*, 74 Ark. App. 424, 49 S.W.3d 670 (2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Lovelace v. Director*, 78 Ark. App. 127, 79 S.W.3d 400 (2002). Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

■ An individual shall be disqualified for benefits if he, voluntarily and without good cause connected with the work, left his last work. *See* Ark. Code Ann. § 11-10-513(a)(1) (Repl. 2002). In *Dingmann v. Travelers Country Club*, 420 N.W.2d 231, 233 (Minn. Ct. App. 1988), the Minnesota Court of Appeals interpreted the term "voluntarily quit," and held that the test is whether the individual has exercised his own free will or choice in the separation. *Weaver v. Director*, 82 Ark. App. 616, 120 S.W.3d 158 (2003). "Voluntarily leaving work" has been said to be the opposite of discharge, dismissal, or lay-off by the employer severing relations with the employee. *Harris v. Daniels*, 263 Ark. 897, 567 S.W.2d 954 (1978). The basic design of the Employment Security Act is to protect an employee from his becoming unemployed through no fault of his own. *Id.* Unemployment benefits are not for those individuals who are voluntarily unemployed. *Wacaster v. Daniels*, 270 Ark. 190, 603 S.W.2d 907 (Ark. App. 1980).

Appellants seemingly concede that there is a split of authority in other jurisdictions on whether acceptance of an incentive program constitutes good cause attributable to employment such

that benefits should be awarded. Although appellants assert that the Board failed to consider a line of cases that support their position, there is no evidence to support such assertion. The Board was simply not persuaded.

Appellants rely on one Arkansas case in particular, *Jackson v. Daniels*, 267 Ark. 685, 590 S.W.2d 63 (Ark. App. 1979), and contend that it is similar to the case at bar. In that case, claimant was a manager of a restaurant that was sold to a new owner. Thinking that lay offs were imminent, claimant expressed a preference that she be laid off before the two employees she had recently hired. In awarding benefits to claimant, this court found a distinction between simply expressing a preference to be laid off in the event of a lay off and a direct request to be laid off work. Appellants argue that, similarly, they requested to participate in a reduction in force that was both negotiated and accepted by appellee.

In *Terry v. Director of Labor*, 3 Ark. App. 197, 623 S.W.2d 857 (1981), the employer initiated a reduction in the work force and claimant was given the option of being laid off or taking one of two available jobs. Claimant chose to be laid off work and was disqualified from receiving benefits. In reversing the Board's decision, this court believed the *Jackson* case to be controlling and concluded that the fact that the claimant preferred to be laid off did not alter the fact that his employment ended by reason of a work reduction instituted by the employer and not for personal reasons. The decision in *Terry* was later overruled by this court in *Reynolds Metals Co. v. Couch*, 8 Ark. App. 37, 648 S.W.2d 497 (1983), but as appellants point out, it did not expressly overrule *Jackson*.

In *Reynolds*, management announced a force reduction and offered senior employees the choice of "bumping" into a lower job classification or taking a lay off. Rather than exercising their "bumping rights," claimants chose the lay off and were subsequently awarded benefits. Realizing that there was no evidence as to the suitability of the work offered, this court reversed its position in *Terry* and held that good cause to refuse work that is otherwise suitable does not exist merely because the employee's acceptance of the offered position will result in the discharge of a fellow employee with less seniority. The case was remanded for the Board to consider the suitability of the offered work.

"Good cause" has been defined as a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment and is ordinarily a question of fact for

the Board of Review to determine. *Thornton v. Director*, 80 Ark. App. 99, 91 S.W.3d 523 (2002). It is dependent not only on the reaction of the average employee, but also on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting. *Gunter v. Director*, 82 Ark. App. 346, 107 S.W.3d 902 (May 28, 2003). Although appellants contend that volunteering for the VSP in order to save the job of a fellow employee with less seniority constitutes good cause for leaving their work, this contention flies in the face of this court's holding in *Reynolds, supra*. As pointed out by the Board, appellants availed themselves of the VSP even though they had the option of continuing in positions that were clearly suitable for them regardless of the fact that appellee initiated the process to reduce its workforce.

The dissenting judges contend that we should consider the 2003 amendment to Ark. Code Ann. § 11-10-513, enacted after the Board's decision, as indicative of the legislature's intent. Pursuant to the amendment, "[n]o individual shall be disqualified under this section if he or she left his or her last work because he or she voluntarily participated in a permanent reduction in the employer's work force after the employer announced a pending reduction in its work force and asked for volunteers." Ark. Code Ann. § 11-10-513(c)(1) (Supp. 2003). The dissenting judges essentially would have this amendment apply retroactively.

■■ It is presumed that all legislation is intended to act prospectively, and statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them a retroactive effect is expressly declared or necessarily implied from the language used. *See City of Dover v. Barton*, 337 Ark. 186, 987 S.W.2d 705 (1999); *James v. James*, 52 Ark. App. 29, 914 S.W.2d 773 (1996). Any doubt on the matter is resolved against retroactive application. *Arkansas Rural Med. Prac. Student Loan & Scholarship Bd. v. Luter*, 292 Ark. 259, 729 S.W.2d 402 (1987). This rule, however, does not ordinarily apply to procedural or remedial legislation. *Bean v. Office of Child Support Enfcm't*, 340 Ark. 286, 9 S.W.3d 520 (2000). Although the Employment Security Act is remedial in nature and must be liberally construed in order to accomplish its beneficent purpose, *Graham v. Daniels*, 269 Ark. 774, 601 S.W.2d 229 (Ark. App. 1980), retroactive application is appropriate for remedial statutes

that "do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation." *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001). Statutes which are remedial or procedural generally supply new, different, or more appropriate remedies which relate to existing rights, and do not create new rights or extinguish old ones. *Harrison v. Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962).

 The 2003 amendment was not enacted to clarify the existing law. Indeed, the amendment changes the existing law by creating a new right. In *Gannett River States Publishing Co. v. Arkansas Indus. Dev. Comm'n*, 303 Ark. 684, 799 S.W.2d 543 (1990), where the language of an amendment to the Arkansas Freedom of Information Act was not curative or for clarification but, rather, made seven additional types of records exempt from disclosure, the amendment operated prospectively only. *Cf. Pledger v. Baldor Int'l, Inc.*, 309 Ark. 30, 827 S.W.2d 646 (1992), (where an act's preamble stated that its purpose was to clarify prior law, the subsequent act could be considered). While it is true that we can look to changes to statutes made by subsequent amendments to determine legislative intent, *Pledger v. Mid-State Constr. & Materials, Inc.*, 325 Ark. 388, 925 S.W.2d 412 (1996), we cannot discern any intent on the part of the General Assembly to have the 2003 amendment applied retroactively. Considering the law as it existed at the time of the Board's decision, we hold that substantial evidence supports the Board's determination that appellants are not eligible for unemployment benefits.

Affirmed.

STROUD, C.J., PITTMAN, BIRD, VAUGHT, and CRABTREE, JJ., agree.

HART, BAKER, and ROAF, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. The Southwestern Bell employees who participated in a force reduction selection process pursuant to their union contract are being denied unemployment benefits based upon the majority's reasoning that participating in the selection process rendered their termination by Southwestern Bell "voluntary" under our statutes. The majority, in reaching this con-

clusion, ignores the public-policy considerations of the Arkansas General Assembly, the body that represents the collective will of the Arkansas people.

The Arkansas legislature in the 2003 session specifically stated that employees who participate in a force-reduction process shall not be disqualified from benefits:

> (c)(1) No individual shall be disqualified under this section if he or she left his or her last work because he or she voluntarily participated in a permanent reduction in the employer's work force after the employer announced a pending reduction in its work force and asked for volunteers.
>
> (2) Such actions initiated by the employer shall be considered layoffs regardless of any incentives offered by the employer to induce its employees to volunteer.

Ark. Code Ann. § 11-10-513 (Supp. 2003).

The majority characterizes this amendment as a change in public policy and asserts that the dissent would apply this change retroactively. That is not the case. Our public policy for over twenty years, as expressed by this court's decision in *Jackson v. Daniels*, 267 Ark. 685, 590 S.W.2d 63 (Ark. App. 1979), even without the legislature's specific directive, requires that we reach the conclusion that these employees were not disqualified from receiving unemployment benefits. In *Jackson*, following the employer's announcement that it would be terminating an employee, appellant Jackson volunteered saying that if the employer had to terminate someone, she hoped she would be the one to lose her job. By *per curiam* opinion, we found that the employee's "volunteering" to be the one to be terminated did not render her leaving employment voluntary under our statutes and awarded benefits. In reaching our decision, we said:

> [I]t is admitted that a reduction in staff of at least three employees was necessitated at the decision of the employer. The fact that the claimant preferred to be one of them rather than those she had hired does not alter the underlying fact that her employment ended by reason of work reduction . . . .

*Jackson*, 267 Ark. at 687, 590 S.W.2d at 64.

If the majority is suggesting that the decision in *Reynolds Metals Co. v. Couch*, 8 Ark. App. 37, 648 S.W.2d 797 (1983), invalidated the reasoning in *Jackson* without expressly overruling the case, then we would be faced with two precedents in conflict with one another. However, the court in *Reynolds* specifically stated that the situation in *Jackson* was different from the situation in *Terry v. Director of Labor*, 3 Ark. App. 197, 623 S.W.2d 857 (1981), and the one before them in *Reynolds*. Unfortunately for appellants in this case, the court in *Reynolds* did not specifically identify the distinction. Despite that omission, the readily apparent difference is that the employers in *Terry* and *Reynolds* terminated the employees' current positions, then offered the employees other employment with the company pursuant to union contracts. The employers had already decided that the positions in which particular employees were employed would be terminated.

*Reynolds* did not overrule *Jackson*. Until today, the precedent of *Jackson* controlled and stood for the proposition that an employee who volunteers to be considered for termination when the employer initiates a work-force reduction is not disqualified from receiving unemployment benefits.

Appellants argued at oral argument that the Director was following the holding in *Jackson* prior to the decisions in these cases, and that the 2003 amendment of Ark. Code Ann. § 11-10-513 was enacted in response to these decisions. Appellees did not dispute that assertion, but merely insisted that the statute cannot be applied retroactively.

Although clearly the amendment itself was not applicable at the time these employees were denied benefits, the amendment is an indication of the legislature's intent that we are required to determine when construing our unemployment security laws. Statutes are to be construed with reference to the public policy which they are designed to accomplish. *Commercial Printing Co. v. Rush*, 261 Ark. 468, 549 S.W.2d 790 (1977); *Ark. Tax Comm'n v. Crittenden County*, 183 Ark. 738, 38 S.W.2d 318 (1931). As the supreme court stated in *Little Rock Furniture Mfg. Co. v. Commr. of Labor*, 227 Ark. 288, 298 S.W.2d 56 (1957), our Employment Security Act must be given an interpretation in keeping with the declaration of state policy. The intent of the Arkansas Legislature controls the construction of our unemployment security laws. *Feagin v. Everett*, 9 Ark. App. 59, 66, 652 S.W.2d 839, 843 (1983).

Unemployment benefits are intended to benefit employees who lose their jobs through no fault or voluntary decision of their own. There are not intended to penalize employers or reward employees, but to promote the general welfare of the State. *Wacaster v. Daniels,* 270 Ark. 190, 194, 603 S.W.2d 907, 910 (Ark. App. 1980). The policy of the Arkansas Employment Security Act is "to encourage employers to provide more stable employment" and to accumulate "funds during periods of employment from which benefits may be paid for periods of unemployment." Ark. Code Ann. § 11-10-102(2)(Repl. 2002).

In a 1910 case, our supreme court recognized that collective-bargaining agreements help advance the interests of society:

> The conservation of the chief asset of the laboring man namely, his labor, through combination with his fellows and by their organized efforts is to be commended rather than condemned. For in that way his well-being may be best promoted and the interest of society thereby advanced. As observed by Judge Taft in *Thomas v. Cincinnati, N. O. & T. Ry. Co. (C. C.),* 62 Fed. 803, 817: "It is of benefit to them and the public that laborers should unite. They have labor to sell. If they stand together they are often able, all of them, to command better prices for their labor, than when dealing singly with rich employers, because the necessities of the single employee may compel him to accept any terms offered."

*Meier v. Speer,* 96 Ark. 618, 626-27, 132 S.W. 988, 991-92 (1910).

We have recognized for almost a century that collective bargaining agreements promote employment stability and the general welfare of the State. We should follow the majority of jurisdictions that hold that employer-initiated work-force reductions and terminations do not disqualify terminated employees from benefits:

> Authority is split over whether an employee volunteering to be included in an employer-planned reduction in force . . . should be considered as having effectively resigned from employment. The majority of these cases provide that although an employee may opt for inclusion in an employer-mandated layoff, the layoff itself is still instituted at the employer's prerogative. The fact that the employees may decide among themselves who will bear the burden of termination does not make the employee's departure voluntary.

These courts reason that when the first and last steps for the termination process are taken by the employer, i.e., planning the reduction and then selecting certain employees for inclusion, even one who has agreed to participate in the process has not voluntarily terminated employment.

*B.E. & K Construction v. Abbott,* 59 P.2d 38, 42-43 (2002) (citations omitted). We have already applied this reasoning in *Jackson.*

Further, the case cited by the Board of Review does not support the majority's position. The Board cited *Oklahoma Empl. Sec. Comm. v. Board of Review for Empl. Sec.,* 914 P.2d 1083 (Okla. Ct. App. 1996), saying that "[i]n cases such as the current one, the offered separation package is best characterized "as an 'opportunity'; that is, it was a bona fide choice that could prove as beneficial as continuing in employment." The Board inserted the parenthetical after the cite stating "(denying benefits to claimant who chose to accept a voluntary separation package when her seniority insulated her from any real danger of being laid off)." The Oklahoma case, however, distinguishes cases where the employees were found eligible for unemployment compensation even though they voluntarily accepted separation benefits under a reduction-in-force plan. The opinion specifically states that each case it was distinguishing involved a mandatory reduction in workforce rather than a truly voluntary separation incentive. This distinction was again applied last year by the Oklahoma Supreme Court in *B.E. & K Construction v. Abbott, supra,* in the context of a worker compensation claim. The court reasoned:

> We consider the analysis proffered by the majority of jurisdictions addressing whether an employee's offer to be included in an employer-announced lay off should be considered a voluntary termination persuasive and logical. The majority's conclusions are based in the realities of the workplace—an employee electing to volunteer for an employer-planned reduction in force does not exercise the ultimate power or final decision as to which employees will be targeted for termination. It is the employer who decides to eliminate a job and to lay off a given individual, based on the employer's needs. It is irrelevant that the employee may have made the employer's determination easier by first volunteering to be laid off.

*Id.* at 43-44.

Our legislature codified that reality with the 2003 amendment of Section 11-10-513. We recognized and applied that reality in *Jackson* more than twenty years ago. Therefore, I would reverse and order an award of benefits.

HART and ROAF, JJ., join.