## SOUTHWESTERN BELL TELEPHONE, L.P. *v.* DIRECTOR of Arkansas Employment Security Department and Stephen E. Barkley

E 03-405                                                    194 S.W.3d 790

Court of Appeals of Arkansas
Division III
Opinion delivered September 29, 2004

*Laney Gossett McConnell, John Herman Ivestar, Cynthia A. Barton,* and *W. Edward Skinner,* for appellant.

*Allan Franklin Pruitt,* for appellee.

ANDREE LAYTON ROAF, Judge. Appellant Southwestern Bell Telephone ("Southwestern Bell") appeals from the Board of Review's ("Board") decision granting unemployment benefits under Ark. Code Ann. § 11-10-513(c) (Supp. 2003) to employee Stephen Barkley, who voluntarily participated in a work force reduction process initiated by Southwestern Bell. On appeal, Southwestern Bell argues that the Board's decision that Barkley left his employment after it requested volunteers for a permanent work force reduction is not supported by substantial evidence and amounts to an erroneous construction of section 11-10-513(c). We reverse and remand for the Board to make further findings of fact.

Barkley, who began working for Southwestern Bell in 1974, ended his employment as a cable-splicing technician on July 8, 2003, after participating in Southwestern Bell's Voluntary Sever-

ance Program ("VSP"). Under this program, when Southwestern Bell determines that there is a surplus of employees in a certain area and that a work force reduction will be necessary, it is required by its collective bargaining agreement to offer eligible employees the opportunity to sign up for a voluntary severance package. Participation in the VSP is based on seniority, and the most senior employees are allowed to participate until the workgroup that contains a surplus is reduced by the required number of employees. The surplus will only be resolved by layoffs if there are not enough eligible participants in the VSP. Layoffs are determined by reverse seniority, so that the least senior employee is laid off first.

In the summer of 2003, a surplus was announced in Paragould, which is within Barkley's "Force Adjustment Area" ("FAA"). Barkley testified that there was not a surplus within his particular workgroup, in Jonesboro, but that he was eligible to be considered in the VSP because there was a surplus within his FAA. He requested a "Voluntary Candidate Request Form" from his manager and filled it out on May 9, 2003, stating that he was requesting to be offered a voluntary severance payment. Barkley then received a "Voluntary Severance Candidate Request Conditional Offer," which stated that his form had been received by the Placement Bureau, that the company was trying to establish a "pool" of voluntary severance candidates, and that it was trying to determine if Barkley would be willing to accept an offer should a match be made for his position. The letter stated that if Barkley accepted the offer, his decision was irrevocable.

Barkley signed this document on June 30, 2003. He testified that he had applied for the VSP and had been made conditional offers on prior occasions, but that he did not accept the offers at those times because he was not "ready to go." On this occasion, after Barkley was offered a voluntary severance payment of $46,700, he decided to accept the offer. Barkley testified that he was matched with another employee in Paragould, who would have lost his job had he not accepted the voluntary severance offer. Barkley acknowledged that his job was not in jeopardy at that time and that he could have continued to work at Southwestern Bell if he had not participated in the VSP. He testified that it was "general knowledge" within the company that the VSP was available once there was an announced surplus and that "the word just gets out." He stated that no one at Southwestern Bell approached him and asked him to volunteer.

Barkley's workgroup manager, Allen Jay Simmons, testified that Barkley was one of ten employees in his workgroup and that he asked to fill out the Voluntary Candidate Request Form after the surplus was announced within their FAA. Simmons stated that no one in his particular workgroup was going to be affected by the surplus and that Barkley's job was not at risk. Simmons testified that the VSP forms are kept on his desk and that the employee makes the choice to fill out the form and send it in. He stated that the employee from Paragould who was matched with Barkley had taken over Barkley's position in Jonesboro.

After leaving his employment with Southwestern Bell, Barkley was denied unemployment compensation by the Arkansas Employment Security Department ("ESD") on the basis that he voluntarily and without good cause left his work. Barkley appealed to the Appeal Tribunal, which reversed the ESD's determination and awarded him unemployment benefits under Ark. Code Ann. § 11-10-514(a) (Supp. 2003) on the finding that he was discharged from his last work for reasons other than misconduct in connection with the work. Southwestern Bell then appealed to the Board of Review, which affirmed and modified the Appeal Tribunal's decision, finding that Barkley was entitled to benefits under section 11-10-513(c) because he voluntarily participated in a permanent reduction in the employer's work force after the employer had announced a pending reduction and asked for volunteers. Southwestern Bell now appeals the Board's decision.

Southwestern Bell argues that the Board's decision that Barkley left his employment after Southwestern Bell requested volunteers for a permanent work force reduction is not supported by substantial evidence and amounts to an erroneous construction of Ark. Code Ann. § 11-10-513(c).

On appeal, the findings of the Board of Review are affirmed if they are supported by substantial evidence. *Billings v. Director*, 84 Ark. App. 79, 133 S.W.3d 399 (2003). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. We review the evidence and all reasonable inferences therefrom in the light most favorable to the Board's findings. *Id*. Even where there is evidence upon which the Board might have reached a different conclusion, appellate review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id*.

Section 11-10-513(a)(1) (Supp. 2003) states that "an individual shall be disqualified for benefits if he or she voluntarily and

without good cause connected with the work left his or her last work." However, in an amendment that became effective on April 11, 2003, the legislature added a new subsection to this statute, which states:

> (c)(1)  No individual shall be disqualified under this section if he or she left his or last work because he or she voluntarily participated in a permanent reduction in the employer's work force after the employer announced a pending reduction in its work force and *asked for volunteers.*

> (2)  Such actions initiated by the employer shall be considered layoffs regardless of any incentives offered by the employer to induce its employees to volunteer.

> (3)  Any incentives received shall be reported under § 11-10-517.

(Emphasis added.)

While Southwestern Bell admits that there was a surplus in its work force that was announced, it contends that there was no evidence that it "asked for volunteers" for the VSP, as is required under subsection (c) of the statute. According to Southwestern Bell, Barkley voluntarily chose to apply for the VSP, without being asked to volunteer, and the Board's "implicit" finding that Southwestern Bell "asked for volunteers" merely by the availability of its VSP is an erroneous construction of the statute.

We are unable to address this argument and must reverse and remand to the Board for it to make further findings. As Southwestern Bell recognizes in its argument, the Board never explicitly made a finding as to whether, and if so, in what manner, the company "asked for volunteers" pursuant to the requirements of section 11-10-513(c). Under the Board's "Findings of Fact and Conclusions of Law," it stated that, "[b]ased on the evidence, the Board of Review finds that the claimant voluntarily participated in a permanent reduction in the employer's work force after the employer announced a pending reduction in its work force, and asked for volunteers; under the law this is a non-disqualifying separation from work." However, the Board does not set forth any factual basis for this conclusion. Although the Board includes some of the relevant facts in its "Summary of Evidence" section, it does not make findings as to which facts it relied upon in reaching its decision.

It is the responsibility of the state agency to make findings of fact, and this court cannot review an agency decision in

the absence of adequate and complete findings on all essential elements pertinent to the determination. *Sanders v. Director*, 80 Ark. App. 110, 91 S.W.3d 520 (2002); *Ferrin v. Director*, 59 Ark. App. 213, 956 S.W.2d 198 (1997). A conclusory statement by the Board that does not detail or analyze the facts upon which it is based is not sufficient. *Ferrin, supra*. Because we are unable to determine the facts upon which the Board relied in reaching its conclusion that Barkley was entitled to benefits under section 11-10-513(c) and because we are unable to do a *de novo* review of an agency decision, we reverse and remand for the Board to make further findings.

Reversed and remanded.

BIRD and CRABTREE, JJ., agree.