A TEAM TEMPORARIES *v.*
DIRECTOR, DEPARTMENT of WORKFORCE SERVICES
and Jennifer L. Fraze

E 08–33                                           289 S.W.3d 158

Court of Appeals of Arkansas
Opinion delivered November 12, 2008

No briefs filed.

KAREN R. BAKER, Judge. Appellant A Team Temporaries appeals the Board of Review's decision to grant appellee Jennifer Fraze benefits. There is no dispute that Ms. Fraze voluntarily quit her employment assigned through the temporary agency to the client firm. The Board based its decision upon the question of whether her voluntarily leaving the available assignment fell within the definition of "conclusion of an assignment" for purposes of benefits in accordance with Ark. Code Ann. § 11-10-513 (Repl. 2002 & Supp. 2007) and § 11-10-514 (Repl. 2002 & Supp. 2007). We hold that the Board improperly applied the law and reverse and remand for further findings of fact.

Through her employment with A Team, Ms. Fraze was assigned to A Team's client, Wing Stop, in a long-term position as manager. After expressing her desire to resign on various occasions, Ms. Fraze quit her assignment August 28, 2007, stating that she felt that she could not meet the expectations of the owner of Wing Stop, Mr. Cheatwood. On August 30, she turned in her Wing Stop uniforms to the Staffing Coordinator of A Team and stated that she needed another job. On September 4, she returned to A Team and requested another assignment; however, despite the employer's attempts to find other acceptable positions, there were no other jobs available for her at that time.

In a notice dated September 14, 2007, the Arkansas Department of Workforce services disqualified Ms. Fraze from receiving benefits pursuant to Arkansas Code Annotated section 11-10-513(a)(4) because she left her work voluntarily and without good cause connected with the work. Ms. Fraze appealed that decision and a hearing was conducted on October 2, 2007. After receiving testimony, the hearing officer reasoned that when Ms. Fraze resigned her long-term assignment for Wing Stop that she expected to report for other assignments available through A Team; therefore, she was laid off due to a lack of work when no assignments, other than the one she quit, were available. The hearing officer then reversed the Department's denial of benefits under Ark. Code Ann. § 11-10-513(a) and awarded benefits under section 11-10-514(a), finding that claimant was discharged from last work for reasons other than misconduct connected with the work. The Board affirmed that decision on review.

During the hearing, Mr. Cheatwood testified that Ms. Fraze would still be working at Wing Stop had she not quit and, in fact,

he had made arrangements for additional training assistance for Ms. Fraze prior to her quitting. Throughout the discussions, A Team stated that it was its position that Ms. Fraze left an available assignment without completing it.

We agree with the employer that the assignment did not end. Rather, Ms. Fraze did not complete her assignment because she refused to continue in the position available to her through the temporary agency, and there was no indication that Ms. Fraze would not still be in her assigned position had she not voluntarily left. However, whether Ms. Fraze voluntarily left her position is only the first question of fact that the Board had to determine. The next fact question is whether she left her last work "without good cause connected with the work."

Our statute providing for disqualification of benefits for voluntarily leaving work provides in relevant part as follows:

> (a)(1) If so found by the Director of the Department of Workforce Services, an individual shall be disqualified for benefits if he or she voluntarily and without good cause connected with the work left his or her last work.

> (2)(A) An individual working as a temporary employee will be deemed to have voluntarily quit employment and will be disqualified for benefits under this subsection if upon conclusion of his or her latest assignment, the temporary employee without good cause failed to contact the temporary help firm for reassignment, provided that the employer advised the temporary employee at the time of hire that he or she must report for reassignment upon conclusion of each assignment and that unemployment benefits may be denied for failure to do so.

Ark. Code Ann. § 11-10-513.

Here the record reflects that Ms. Fraze voluntarily left available work by leaving an ongoing, open-ended assignment that remained available after she quit. The fact that she returned to A Team and requested a new assignment does not negate the fact that the position as manager, in which she had been placed, was still available and, accordingly, not concluded.

The Board misapplied the law when it, in effect, ignored subsection (a)(1) of section 11-10-513 to determine whether Ms. Fraze should be disqualified for benefits if she

voluntarily and without good cause connected with the work left her last work. Ms. Fraze's last work was her position as manager at Wing Stop. The fact that A Team was her employer for the available work as manager does not change the nature of her last work. Before the Board may consider subsection (a)(2)(A), it must first make findings of fact concluding whether or not Ms. Fraze's resignation was without good cause connected with her work as manager at Wing Stop. If the Board finds that she left without good cause, then Ms. Fraze is disqualified from benefits. If the Board finds that she left with good cause, then it may resume its analysis to determine whether Ms. Fraze was deemed to have voluntarily relinquished her employment with A Team.

Subsection (a)(2)(A) imposes a duty upon the temporary employment agency to inform an individual working as a temporary employee that the failure to report for reassignment may result in a denial of unemployment benefits and states that the employee's failure to report for reassignment shall be deemed to be a voluntary relinquishment of employment. This subsection recognizes that assignments through a temporary agency are often short in duration and that the agency may quickly reassign the employee to a different position. Furthermore, strong public-policy considerations support the role that temporary agencies hold in our community. *Jones v. Sheller-Globe Corp.*, 487 N.W.2d 88, 92 (Iowa App.1992).

Our court, in *Weaver v. Director, Employment Sec. Dep't*, 82 Ark. App. 616, 120 S.W.3d 158 (2003), explained that whether there was good cause to leave is irrelevant if the departure was not voluntary. In *Weaver*, the employee did not voluntarily quit when she was hired for a part-time, temporary position at the school, and, she not only completed her deadline in December, but accepted an extension of her position until the end of the school year. The employee was entitled to benefits in that case because she fulfilled the obligations of the position until the position was no longer available.

The focus in *Weaver* was whether the employee had voluntarily left the position. The temporary nature of the position was dispositive of the issue of voluntariness. The Board in this case, however, stated that "no matter the manner in which the client firm accepted the claimant's resignation from the assignment, the result was the 'conclusion' or end of the assignment." The Board was mistaken in beginning its analysis from the temporary agency's

willingness to find another available position for Ms. Fraze. The availability of the work is the determinative factor in determining the disqualification of benefits, not whether an agency is willing to find an assignment more to the liking of the claimant. Because the Board failed to make a finding of fact as to whether Ms. Fraze voluntarily and without good cause left the position as manager at Wing Stop that remained available for her continued assignment, we reverse and remand for the Board to make that factual determination on the record in this case. *See Southwestern Bell Tel., L.P. v. Director of Ark. Employment Sec. Dep't,* 88 Ark. App. 36, 36, 194 S.W.3d 790, 791 (2004). If the Board then determines that Ms. Fraze left for good cause connected with the work as manager, then it may proceed to apply the provisions of subsection (a)(2)(A) and section 11-10-514 to award or deny benefits.

Reversed and remanded.

GLOVER, VAUGHT, and HEFFLEY, JJ., agree.

ROBBINS and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. The Arkansas Board of Review (Board) awarded unemployment benefits pursuant to Arkansas Code Annotated § 11-10-514(a) (Supp. 2007) because it found that claimant Jennifer Fraze's separation from her last work was due to a layoff caused by the unavailability of work, rather than misconduct in connection with the work. I would affirm the Board's decision, which is supported by substantial evidence. *See* Ark. Code Ann. § 11-10-529(c)(1) (Supp. 2007). In reversing and remanding for the Board to determine under a *separate* statute, Arkansas Code Annotated § 11-10-513 (Supp. 2007), whether Fraze voluntarily left her employment without good cause, the majority opinion ignores the dispositive finding that the Board made under § 11-10-514(a), and seeks to require the Board to make an unnecessary finding.

Through A Team, a temporary employment agency, Fraze accepted a long-term assignment as a manager with Wing Stop. Fraze was unhappy with her assignment for various reasons and threatened to quit several times before she finally quit. She ultimately left that assignment before she completed it. Fraze explained that she resigned because she could not satisfy Wing Stop's owners with her job performance; thus, she felt it would be best if she quit. Wing Stop's owners accepted Fraze's resignation

and another A Team employee was hired to fill the vacancy. As the terms of Fraze's employment with A Team dictated, she reported to A Team within five days of ending her assignment with Wing Stop, at which time, the employer did not have any available suitable work.

Although we review only the Board's findings, the procedural history of this case demonstrates the majority's error in requiring the Board to make separate findings under § 11-10-513. The Department of Workforce Services (Department) initially denied Fraze unemployment benefits based on § 11-10-513. That statute denies unemployment benefits to a claimant who voluntarily leaves work. *See* Ark. Code Ann. § 11-10-513(a)(1). The same statute also disqualifies a temporary employee who, without good cause, fails to contact the temporary help firm for reassignment upon conclusion of his or her latest assignment. *See* Ark. Code Ann. § 11-10-513(a)(2). The Arkansas Appeal Tribunal reversed the Department's denial of benefits under § 11-10-513, and modified the Department's determination to specifically award benefits under § 11-10-514(a), which disqualifies a claimant who is discharged from his or her last work due to misconduct in connection with the work.

The Board affirmed the Appeal Tribunal's decision, awarding benefits under § 11-10-514(a). In so doing, the Board rejected the employer's claim that Fraze "quit the employment when she quit the assignment" to Wing Stop. The Board determined that Wing Stop's acceptance of Fraze's resignation resulted in the conclusion of Fraze's temporary assignment with Wing Stop but did not end her employment with A Team. The Board found that Fraze's employment with A Team continued because A Team considered Fraze eligible for reassignment when her assignment with Wing Stop ended. Accordingly, the Board concluded that Fraze's separation from her last work was due to lack of work, rather than due to misconduct connected with work within the meaning of Ark. Code Ann. § 11-10-514(a).

I would affirm the Board's decision. While Fraze did not *complete* her assignment with Wing Stop, § 11-10-513 does not define a temporary employee as one who completes a temporary assignment. A temporary employee is an employee assigned to work for the clients of a temporary help firm. Ark. Code Ann. § 11-10-513(a)(2)(C) (Repl. 2003). A temporary help firm means a firm that *hires its own employees and assigns them to clients* to support or supplement the client's work force in work situations such as

employees' absences, temporary skill shortages, seasonal work-loads, and special assignments and projects. Ark. Code Ann. § 11-10-513(a)(2)(B)(i) (emphasis added). Providing that the temporary employee has been so informed, he will be deemed to have voluntarily quit employment and will be disqualified for benefits if, *upon conclusion of his latest assignment*, the temporary employee without good cause failed to contact the temporary help firm for reassignment. Ark. Code Ann. § 11-10-513(a)(2)(A) (emphasis added).

The Board here specifically found that Fraze's assignment was *concluded*; upon conclusion of her temporary assignment to Wing Stop, she contacted her employer as required, and no suitable work was available. That is all that § 11-10-513(a)(2)(A) requires. The majority opinion fails to explain why Wing Stop's acceptance of Fraze's resignation did not result in the conclusion of her assignment; it also sweeps aside the fact that Fraze's employment with A Team *thereafter continued* because A Team considered Fraze eligible for reassignment when her assignment with Wing Stop ended. Obviously, Fraze did not "quit" her employment with the temporary agency when she "quit" Wing Stop because her employer thereafter attempted to find her another temporary job.

Accordingly, because the requirements of § 11-10-513 were satisfied, that statute cannot be used as a basis for denying Fraze unemployment benefits. Moreover, because the Board's decision to award benefits under § 11-10-514 is supported by substantial evidence, there is no need to reverse and remand for it to determine whether Fraze voluntarily quit or had good cause to quit under § 11-10-513. To do so would require the Board to engage in an exercise that is both futile and improper given our standard of review and the plain meaning of the Board's finding and the pertinent statute.

The practical effect of the holding set forth in the majority opinion is to judicially nullify the very real distinction between temporary employees assigned by temporary-help firms, and other employees. It is one thing for the Arkansas General Assembly to rescind that distinction; after all, the General Assembly created it. It is judicial legislation for our court to do so.

I am authorized to state that Judge Robbins joins in this opinion.