**Andrew JOHNSON, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COM-
PENSATION BOARD, Respondent.**

**No. 13807.**

District of Columbia Court of Appeals.

Submitted April 19, 1979.

Decided Oct. 12, 1979.

George Ray, Washington, D. C., was on brief, for petitioner.

Russell L. Carter, D. Kevin Dugan, and N. Denise Wilson, Washington, D. C., were on brief, for respondent.

Before NEWMAN, Chief Judge, and KERN and FERREN, Associate Judges.

FERREN, Associate Judge:

Petitioner, Andrew Johnson, challenges a decision by the District Unemployment Compensation Board (Board) that Johnson (1) had failed to accept suitable work, D.C. Code 1973, § 46–310(c), and (2) had become ineligible for benefits due to unavailability for work, D.C.Code 1973, § 46–309(d). We affirm.

I.

In October 1977, Johnson left his job as a counselor at the University of the District of Columbia and moved to Hawaii with his family. The severe respiratory problems suffered by Johnson's wife and son prompted the move. Johnson holds a masters degree in community psychology and had been employed by the university for several years. At the time of his move to Hawaii, Johnson earned approximately $14,000 per year.

Johnson filed an interstate claim with the Board, see D.C.Code 1973, § 46–316, during November 1977 and initially was found eligible for benefits. Thereafter, he reported his contacts with prospective employers to the Hawaii Department of Labor and Industrial Relations. In mid-March 1978, the Hawaii State Employment Office referred Johnson to the University of Hawaii, where

there was a job opening for a contracts administrator at a salary stated to be $1,100 per month. The university offered the job to Johnson, however, as a temporary position—for two months—at a salary of $987 per month. Johnson declined the offer.

After an investigation, including interviews with Johnson, a claims deputy of the Board made two determinations on April 18, 1978. First, he disqualified Johnson from receiving benefits for an eight-week period—March 12, 1978 to May 6, 1978—because of his refusal to accept the contract administrator's job. The claims deputy found that the job was "suitable work." D.C.Code 1973, § 46–310(c).[1] Second, he found Johnson ineligible for benefits for an indefinite period beginning March 12, 1978, on account of his failure to make himself available for work as required by § 46–309(d).[2] The claims deputy stated that Johnson had unduly restricted his availability in two ways: by primarily seeking college counselor positions and by failing to lower his wage demands. An interstate hearing took place on May 17, 1978, and the appeals examiner affirmed both decisions on May 24, 1978. The Board adopted the examiner's findings of fact and affirmed his decision on August 11, 1978. Having exhausted all administrative appeals as required by D.C.Code 1978 Supp., § 46–312,

Johnson filed a petition for review by this court.

## II.

Johnson contends that the contract administrator's job was not suitable work and, accordingly, that he should not have received an eight-week disqualification under § 46–310(c).

■ First, he says, the salary was inadequate when compared with his $14,000 salary in the District of Columbia.[3] It is true that under § 46–310(c), a claimant's prior earnings are one factor which the Board must consider in determining whether a claimant has rejected suitable work.[4] The Board, however, has a responsibility to determine whether, under the facts and circumstances, the salary offered was reasonably within an acceptable range derived by reference to the individual's previous income. *See Bus v. Bethlehem Steel Corp.*, 37 A.D.2d 98, 322 N.Y.S.2d 310 (1971), *aff'd*, 32 N.Y.2d 955, 347 N.Y.S.2d 206, 300 N.E.2d 736 (1973). In making that finding here, the Board appropriately took into account the fact that Johnson had been unemployed for four months at the time he refused the job. As the period of unemployment continues, a job offer at a salary lower than

1. D.C.Code 1973, § 46–310(c) provides in part:

 If any individual otherwise eligible for benefits fails, without good cause as determined by the Board under regulations prescribed by the Council of the District of Columbia, either to apply for new work found by the Board to be suitable when notified by any employment office or to accept any suitable work when offered to him . . . he shall not be eligible for benefits with respect to the week in which such failure occurred and with respect to not less than four nor more than nine consecutive weeks of unemployment which immediately follow such week, as determined by the Board in such case according to the seriousness of the refusal. . . . In determining whether or not work is suitable within the meaning of this subsection the Board shall consider (1) the physical fitness and prior training, experience and earnings of the individual, (2) the distance of the place of work from the individual's place of residence, and (3) the risk involved as to health, safety, or morals.

2. D.C.Code 1973, § 46–309(d) provides in part:

 An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found by the Board—
 (d) that he is available for work and has registered and inquired for work at the employment office designated by the Board, with such frequency and in such manner as the District of Columbia Council may by regulation prescribe: *Provided,* That failure to comply with this condition may be excused by the Board upon a showing of good cause for such failure; . . .

3. At the rate of $987 per month, the new job would have resulted in a reduction of about 15% in Johnson's annual gross income.

4. The Board need not consider the fact that Johnson originally was told that the job paid a higher salary ($1,100). The statutory standard is whether the salary actually offered is unreasonably below that of his previous employment.

the claimant earned previously may become suitable, even though the lower salary may not have been suitable at the time the claimant first became unemployed. *See Wallace v. Sullivan*, Tenn., 561 S.W.2d 452, 454 (1978); *Murphy v. Unemployment Compensation Board of Review*, 24 Pa.Cmwlth. 466, 469, 357 A.2d 263, 264 (1976).[5] Thus, it was reasonable for the Board to expect Johnson, after four months of fruitless searching, to moderate his salary expectations.

 Johnson contends, next, that temporary work is not suitable for a claimant seeking permanent employment.[6] Although a claimant might not initially be expected to take a temporary job, the Board was reasonable in expecting Johnson to do so after four months of unemployment. *Compare Toston v. Industrial Commission*, 160 Colo. 281, 417 P.2d 1 (1966) (claimant not required to take a temporary job when only unemployed for a "short time"). It is possible, of course, that under certain circumstances a temporary job might be unsuitable if it would prevent a claimant from seeking long-term employment. The appeals examiner found, however, that Johnson "could have continued a search for more suitable employment while employed at the University of Hawaii." We agree that there is nothing in the record tending to show that the temporary job at the University of Hawaii would have impaired Johnson's continued effort to find permanent employment.

Finally, Johnson asserts that he did not have the proper training and experience for a position as a contracts administrator. *But see* note 6 *supra*. Ample evidence of record indicates the contrary. When applying for benefits, Johnson indicated an ability to work in "business administration (acc't., management, bookkeeping and marketing)," as well as counseling.[7] Moreover, the prospective employer was convinced, on the basis of a personal interview, that Johnson could handle the job.[8]

The record, therefore, supports the Board's decision that Johnson should be disqualified from benefits for an eight-week period—March 12 to May 6, 1978—because he refused to accept suitable work.

### III.

Johnson also asserts that the record does not support the Board's determination that he was unavailable for work, § 46–309(d), and thus ineligible for benefits, as of March 12, 1978.

 The claimant has the burden of demonstrating availability for work, which means that he or she must be " 'genuinely attached to the labor market.' " *Hawkins v. District Unemployment Compensation Board*, D.C.App., 390 A.2d 973, 975 (1978) (quoting *Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Board*, 129 U.S.App.D.C. 155, 157, 392 F.2d 479, 481 (1968)); *accord, Cumming v. District Unemployment Compensation Board*, D.C.App., 382 A.2d 1010, 1015 (1978). A claimant may show that attachment by making an adequate number of contacts with employers. *See Woodward & Lothrop, supra*, 129 U.S.App.D.C at 157, 392 F.2d at

---

5. Statutes underpinning these Tennessee and Pennsylvania decisions direct the respective boards to consider length of unemployment as a factor in assessing whether a job is suitable. Although the District of Columbia statute does not have such a specific provision, we note that according to applicable regulations, the District Board must consider "such further or additional standards as it believes will insure a reasonable determination." 18 DCRR § 301.3(a). We conclude that this language provides authority for tempering the prior earnings criterion, § 46–310(c)(1), with a length-of-unemployment factor.

6. Contrary to this assertion, the record shows that Johnson was willing to accept the temporary job if it had paid $1,100 per month, as the Hawaii State Employment Office had told him it would.

7. In pursuing his masters degree in counseling, Johnson had minored in marketing, and he had worked for five years in the marketing field.

8. We also find no basis in the record for Johnson's claim that the temporary job as contracts administrator was unsuitable because the interviewer for the University of Hawaii had projected a racist attitude.

481. The claimant will be found unavailable for work within the meaning of § 46–309(d), however, if the job search is unreasonably restricted. *National Geographic Society v. District Unemployment Compensation Board*, 141 U.S.App.D.C. 313, 321, 438 F.2d 154, 162 (1970).

The appeals examiner determined that Johnson was unavailable as of March 12, 1978, for two reasons: (1) his concentration on employment with colleges and universities, and (2) his refusal to moderate his wage demands. As to the first, Johnson replies that his contacts have been sufficiently diversified. Specifically, the record shows the following contacts for the period up to the date of ineligibility (March 12, 1978) and, thereafter, up to the date of the appeals examiner's decision (May 24, 1978): [9]

### JOB CONTACTS [10]

| | 11/10/77–3/12/78 | 3/12/78–5/24/78 | Total |
| --- | --- | --- | --- |
| Colleges or universities | 23 (74%) | 10 (43%) | 33 (61%) |
| Other | 8 (26%) | 13 (57%) | 21 (39%) |
| | 31 | 23 | 54 |

Affirming the claims deputy's decision, the appeals examiner concluded that Johnson was "ineligible to receive unemployment benefits from 3–12–78 until such time as he demonstrates that his availability for

full time work is not restricted." In doing so, the examiner appears to have based his decision solely on the record before the claims deputy, for he cited the fact that "[s]ixteen (16) of his job contacts have been at the University of Hawaii"—the number of Johnson's contacts with that university prior to mid-March 1978.

■ We agree that the record reflected in the chart above supports a conclusion that as of March 12, 1978, Johnson had unreasonably restricted his job search to colleges and universities.[11] However, for purposes of clarification, it is important to stress that neither the appeals examiner nor the Board has ruled on the question of Johnson's availability for work (either as to diversity of contacts or required salary level) after March 12, 1978. If we assume that the chart above is accurate, *see* note 9 *supra*, the record shows that between March 12 and May 24, 1978, the date of the appeals examiner's decision, Johnson's college and university contacts dropped from 74% to 43% of the total.[12] Without further action of the Board, therefore, neither Johnson nor this court can know whether his more recent contacts—those after March 12, 1978—were sufficiently diversified, and had a realistic enough salary requirement, to reestablish his availability.

### IV.

■ When the Board decides that a claimant is unavailable for work, D.C.Code

9. For convenience, the Board has provided this court with a list of Johnson's job contacts for November 10, 1977, through March 24, 1978, derived from Johnson's weekly claim forms. Supp.Rec.Ex. 14. Johnson does not dispute the accuracy of the list. Johnson himself filed with the interstate examiner a list of job contacts for the period April 3–May 13, 1978, which we have used to complete the table. Because the appeals examiner and the Board did not purport to make a determination as to availability for work after March 12, 1978, the government has not taken a position on the accuracy of Johnson's figures. Nor do we; they are used solely to illustrate our reasoning in this opinion. Finally, Johnson has filed with this court a list of job contacts after May 13, 1978. We are limited to review of the record before the appeals examiner and the Board, D.C.Code 1978 Supp., § 1–1510. Thus, we cannot consider this supplementary list.

10. The total number of contacts for each period omits (1) employers who cannot be identified from the lists and (2) contacts at agencies, such as the state employment service, which did not focus on a particular job.

11. The record also supports the appeals examiner's ruling that Johnson's refusal to moderate his wage demands unreasonably had restricted his availability. Johnson would have been available for the contract administrator's job at the University of Hawaii if he had been willing to accept a salary 15% below his original salary demand. *See* Part II *supra*.

12. The government itself notes in its brief that "the claimant's job contacts reflect greater variety after he was held ineligible on April 18, 1978," the date of the claims deputy's decision.

1973, § 46–309(d), it is important for all concerned—especially for the claimant—that the Board specify the period to which that decision applies.[13] In this case, for example, the claims deputy made a determination, effective March 12, 1978, that Johnson was ineligible "until [he] can establish [his] unrestricted availability for full-time work." The appeals examiner used similar language. *See* note 13 *supra*. As indicated in Part III *supra*, we have concluded that the appeals examiner confined his review to the period covered by the claims deputy—and no more.

That is not always the case. Although there must come a point when the record before the appeals examiner is closed, that point is not necessarily established by the record before the claims deputy. The record before the appeals examiner and the Board—and thus this court—ordinarily includes evidence received at the interstate hearing (after the claims deputy has ruled) or otherwise admitted by the appeals examiner. Therefore, absent express or other clear indications of the dates covered by a decision, the record could be understood to include all evidence properly before the appeals examiner as of the date of his or her decision.

In the present case, therefore, were it not for the appeals examiner's (and thus the Board's) limitation of the record to March 12, 1978, we would be confronted by a May 24, 1978, determination under § 46–309(d), adverse to the claimant, based on an administrative record with a noticeable change in the pattern of job contacts between March 12 and May 24, after the claims deputy had

ruled, tending to undermine that determination. Thus, we would be confronted by the question whether the evidence could be said to support that broader determination—a question which might not be answerable without a remand for further proceedings.

We make these observations in the hope of clarifying the proper way for all participants to deal with § 46–309(d) determinations—and in the interest of minimizing the prospects for remands to the Board. In summary, all § 46–309(d) determinations should specify whether they extend to the date of the appeals examiner's determination or, as in this case, are more limited.

V.

We affirm the Board's decision that Johnson was disqualified from receiving benefits for eight weeks, March 12–May 6, 1978, because of his refusal without good cause to accept suitable work. D.C.Code 1973, § 46–310(c). We also affirm the Board's decision that Johnson was unavailable for work, and thus ineligible for unemployment compensation benefits, as of March 12, 1978—subject to his right to reapply for benefits after that date consistent with his eight-week disqualification.

*So ordered.*

---

13. The language used in the appeals examiner's decision of May 24, 1978, "claimant is held to be ineligible to receive unemployment benefits from 3/12/78 until such time as he demonstrates that his availability for full-time work is not restricted," could suggest to a claimant that the determination covered the period through the date of the examiner's decision, rather than

was limited to the period through March 12. The claimant, therefore, might conclude that there is no point in trying to reestablish eligibility for any period prior to May 24. Accordingly, unless the Board makes clear the precise date of its determination, claimants may mistakenly lose benefits to which they are lawfully entitled.