520 A.2d 379

**Carlotta M. TAYLOR**

**v.**

**DEPARTMENT OF EMPLOYMENT AND TRAINING.**

**No. 80, Sept. Term, 1986.**

Court of Appeals of Maryland.

Jan. 30, 1987.

Edward J. Skeens, Suitland, for appellant.

Evelyn O. Cannon, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Alexander Wright, Jr., Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

This case presents the question of whether an involuntarily unemployed worker, ineligible for retirement, who receives a lump sum retirement payment and rolls it over into an individual retirement account (IRA), is eligible for unemployment compensation benefits. Article 95A, § 6(g) of the Unemployment Insurance Law disqualifies claimants who have received an amount equal to or in excess of the weekly

benefit amount in the form of a retirement payment. The appellant, Carlotta M. Taylor, invites us to qualify her for unemployment compensation benefits under § 6(g) by characterizing her receipt of a lump sum retirement payment as a temporary constructive transfer, accomplished merely for the purpose of continuing a retirement plan prematurely terminated. We decline this invitation and hold that the disqualifying provisions of § 6(g) appropriately apply to the facts of this case. We explain.

The facts are simple and undisputed. Taylor was employed as an accounting manager at Joyce Beverages for nearly twenty years when, at the age of 56, her job was abolished and her employment terminated. During the time of her employment she had participated in an employer-sponsored profit sharing trust. The profit sharing program was designed as a retirement plan for employees. Upon separation from employment, Joyce Beverages disbursed to Taylor $38,937.11, which represented the entire vested balance of the profit sharing trust. After deducting the amount of her contribution, Taylor immediately rolled over the remaining $34,755.27 into an IRA at the Maryland National Bank, and applied to the appellee, the Department of Employment and Training, for unemployment compensation benefits.

Her application for benefits was subsequently denied on the basis she had received a retirement payment exceeding her weekly benefit amount under § 6(g). After exhausting administrative remedies, Taylor appealed to the Circuit Court for Prince George's County which affirmed the decision of the Department of Employment and Training. Taylor then made timely appeal to the Court of Special Appeals. Before argument in that court, we granted certiorari on our own motion to consider the important question presented.

The focus of our inquiry is the meaning of the term "received" within the provisions of § 6(g), and it is to these provisions that we now turn. Section 6(g) disqualifies a claimant "for any week ... he is receiving or has received

an amount ... equal to or in excess of his weekly benefit amount in the form of a pension, annuity or retirement or retired pay, or any other similar periodic payment...." The provision also envisions lump sum payments for § 6(g)(3)(ii) provides that "A lump sum payment of a pension, annuity, or retirement or retired pay shall be allocated to a number of weeks following the date of separation according to the number of weeks of pay received at the individual last pay rate."

■ Taylor concedes that under a plain and ordinary interpretation of § 6(g), she has received a lump sum retirement payment in excess of her calculated weekly benefit amount and is ineligible for benefits. She urges, however, that to effectuate the remedial design of the Unemployment Insurance Law, the court must adopt a restrictive interpretation of the term "received" under § 6(g), and limit its application in this case to involuntarily unemployed individuals who are eligible for retirement.[1]

■ As we have often recognized, Maryland's Unemployment Insurance Law is designed to alleviate the consequences of involuntary unemployment and ease the burden of economic distress. *Board of Educ. Mont. Co. v. Paynter*, 303 Md. 22, 491 A.2d 1186 (1985); *Employ. Sec. Adm. v. Browning-Ferris*, 292 Md. 515, 438 A.2d 1356 (1982); *Sec., Dept. Human Resources v. Wilson*, 286 Md. 639, 409

---

1. Taylor alternatively relies, by analogy, on § 6(h) and its related COMAR regulation 24.02.02.10A(1), for the view that her retirement proceeds are not disqualifying under § 6(g) because her job was abolished. We reject this argument. Section 6(h) deals with "dismissal pay or wages in lieu of notice" and disqualifies a claimant who has received payments of that sort. It contains an exception, without parallel in § 6(g), avoiding the disqualification "if the claimant's unemployment is due to the abolition of his job either for technological reasons or because the employer has permanently discontinued" operations. This case concerns retirement pay, not dismissal pay. Moreover, even if we could somehow force the § 6(h) exception into § 6(g), it would be of no avail to Taylor. The record does not show either that her job was abolished for technological reasons or that her employer has permanently discontinued operations.

A.2d 713 (1979); *Saunders v. Unemp. Comp. Board,* 188 Md. 677, 53 A.2d 579 (1947); *Compensation Board v. Albrecht,* 183 Md. 87, 36 A.2d 666 (1944). To accomplish this important purpose, weekly income benefits are paid to individuals who have become involuntarily unemployed through no fault of their own, and who are otherwise eligible. In determining the scope of the statute and the eligibility of claimants, we have held that the provisions of the Unemployment Insurance Law should be liberally construed to effectuate its legislative intent, and any disqualifying provisions in the remedial statute should be strictly construed. *Saunders v. Unemp. Comp. Board,* 188 Md. at 681–683, 53 A.2d at 580–581.

It cannot be denied that a consequence of involuntary unemployment may be the premature termination of a retirement plan. Indeed, Taylor presents the interesting policy argument that where the receipt of a lump sum retirement payment is characterized as present disposable income, a worker is essentially forced to use all or part of the retirement savings for immediate expenses, thus impairing her future economic security. It is true, of course, that § 6(g) clearly envisions and requires that unemployment compensation benefits be offset by Social Security and other pensions. Taylor, nonetheless, argues that such an offset should not apply to an employee who is ineligible for retirement and who desires to continue working. We are not unmindful of the policy considerations inherent in the unemployment compensation scheme, but Taylor mistakes her argument.

■ That the disqualifying provisions of § 6(g) may, in these circumstances, promote an unwise public policy is not the issue before us. The threshold inquiry in any issue of statutory construction is whether the language is ambiguous or of uncertain meaning. If it is not, then the Court applies its plain and ordinary meaning. *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 517 A.2d 730 (1986); *Board of Educ. Mont. Co. v. Paynter,* 303 Md. 22, 491 A.2d

1186 (1985). Only where the language is of uncertain meaning or doubtful import should the Court seek to judicially construe the statute. *Bledsoe v. Bledsoe,* 294 Md. 183, 448 A.2d 353 (1982). In the present instance, § 6(g) is not couched in uncertain language nor is it of doubtful import. Also absent is any qualifying language that might cloud an interpretation of the provisions. Section 6(g) states plainly that an employee is disqualified for benefits in "any week which he is receiving or has received an amount ... equal to or in excess of his weekly benefit amount ... in the form of ... retirement or retired pay...." The statute also clearly requires that "a lump sum payment of a ... retirement or retired pay shall be allocated...."

We cautioned in *Saunders, supra,* that while it is important to construe liberally the Unemployment Compensation Law so as to effectuate its legislative design, the Court cannot read into the statute what is plainly not there. The statute prohibits the pyramiding of unemployment compensation atop retirement benefits. It makes no distinction between involuntarily unemployed individuals eligible for retirement and those ineligible. Nor does it distinguish between one who voluntarily retires and one who is involuntarily retired. Despite Taylor's urging, the Court cannot fabricate such a distinction. Taylor received the money; it was retirement pay; once it was in her hands, she was free to do with it what she wished.

Other jurisdictions considering similar statutes have also concluded that lump sum retirement payments that equal or exceed weekly benefits disqualify an individual from unemployment compensation benefits, and likewise make no distinction between involuntarily unemployed individuals who are eligible for retirement and those who are ineligible. *Subluskey v. D.C. Dept. of Employment Ser.,* 467 A.2d 480 (D.C.1983); *Lincoln Nat'l Bank v. Review Bd. of Indiana,* 446 N.E.2d 1337 (Ind.App. 2 Dist.1983); *State Div. of Administration v. State,* 367 So.2d 43 (La.App.1978), *writ denied,* 368 So.2d 135 (La.1979); *In Re Claim of Rich-*

*mond,* 96 A.D.2d 1132, 467 N.Y.S.2d 730 (3d Dept.1983); *Mahland v. Un. Comp. Bd. of Rev.,* 83 Pa.Commw. 301, 476 A.2d 1023 (1984).

Whether the application of § 6(g) should make any distinction between employees eligible for retirement and those ineligible is a question fraught with policy considerations that are best suited for resolution by the legislature. We interpret the language of § 6(g) according to its plain and ordinary meaning and conclude that the receipt of a lump sum retirement payment that equals or exceeds the weekly benefit amount disqualifies Taylor for unemployment compensation benefits.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.