284

918 A.2d 1218

**SCHERER TAX SERVICE, INC.**

v.

**DEPARTMENT OF LABOR, LICENSING AND REGULATION.**

**No. 123 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

March 14, 2007.

Daniel C. Conkling, Glen Burnie, MD, for Appellant.

Matthew A. Lawrence (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, MD, for Appellee.

Panel: SALMON, ADKINS and BARBERA, JJ.

SALMON, Judge.

Section 8–1005(a)(2) of the Labor and Employment Article of the Maryland Code (1999 Repl. Vol.),[1] with exceptions not here applicable, states that a claimant who otherwise is eligible to receive unemployment insurance benefits is disqualified from receiving such benefits if the Secretary of the Department of Labor, Licensing and Regulation ("DLLR") finds that "the individual, without good cause, failed to accept suitable work when offered."

Sharon A. Long ("Long") commenced receiving unemployment insurance benefits during the week of January 9, 2005. On January 20, 2005, she was offered a full-time job that would have lasted twelve weeks, i.e., until April 15, 2005. Long rejected the job offer because she wanted a permanent job—not a seasonal one.

The question to be resolved in this appeal is whether a claimant, such as Long, who rejects an offer of full-time, suitable employment has "good cause" to do so, within the meaning of section 8–1005(a)(2), when the sole reason for the job refusal is that the claimant wants to find permanent employment. We shall answer that question in the negative.

---

1. All statutory references in this opinion are to Title 8 of the Labor and Employment Article of the Annotated Code of Maryland (1999 Repl. Vol.).

## I. *FACTS AND PROCEDURAL BACKGROUND* [2]

The appellant, Scherer Tax Service, Inc. (hereinafter "STS"), is owned and operated by Daniel C. Conkling, Esq., a Maryland attorney. STS is in the business of preparing income tax returns. Its office is in Glen Burnie, Maryland, and is open only during the tax season—mid-January to April 15.

Long, who retired from Verizon Communications in 1997, was employed by STS as a receptionist during the 2004 tax season. She worked forty hours per week and earned $11 an hour. Immediately after April 15, 2004, she was terminated by STS due to lack of work. Nevertheless, Mr. Conkling offered Long a part-time job at one of his other offices where he provided certified public accounting services. Long declined that offer.

In September 2004, Long commenced her search for a full-time job. Her search from September to December 2004 was unsuccessful.

On January 9, 2005, Long commenced receiving unemployment compensation. Less than two weeks later, on January 20, 2005, a representative of STS offered Long her old job back at a higher pay rate. She was to work as a receptionist for the same number of hours per week as she had worked previously, and she was to be paid $500 per week ($12.50 per hour × 40 hours). The job offer was for seasonal employment, however, in that the job, like her previous one, would terminate at the end of the "tax season." Long considered STS's offer for about two days but then turned it down because she wanted to find a permanent, full-time job. [3]

---

2. Unless otherwise indicated, all facts set forth in Part I of this opinion are undisputed.

3. STS presented evidence below, which, if believed, indicated that Long turned down the job offer because STS refused to pay her "under the table"—as Long (allegedly) demanded. The Board rejected STS's evidence in this regard; the testimony of Long, which evidently was credited by the Board, provided a substantial basis for it to do so.

On February 1, 2005, STS notified the DLLR of Long's refusal to accept its job offer.

A DLLR claims specialist determined, on May 17, 2005, that Long had refused an offer of suitable work from STS, but because STS had failed to timely notify DLLR of the claimant's refusal, her failure to accept work could not be considered a basis for disqualification under section 8–1005. The claims specialist also found that for the workweek ending February 5, 2005, Long was able, available, and actively seeking work. STS appealed these adverse determinations.

On June 14, 2005, a DLLR Hearing Examiner conducted an evidentiary hearing. Long testified at the hearing that she conducted her job search exclusively by use of the internet and submitted numerous job applications by that means. No evidence was introduced that indicated that Long could not have continued her search for a permanent job if she had accepted STS's January 20, 2005, offer.[4]

By separate decisions, the Hearing Examiner ruled: (1) STS had timely notified DLLR of Long's refusal of its job offer; (2) nevertheless, the claimant had good cause to reject STS's offer; and (3) Long, on all relevant dates, was able, available, and actively seeking work. The net effect of the Hearing Examiner's decision was to affirm the determination of the claims examiner that Long was eligible to continue receiving unemployment compensation benefits from January 9, 2005, until she found employment in May 2005.

STS appealed both decisions to the Board of Appeals ("Board"). By order dated August 1, 2005, the Board remanded the "able, available and actively seeking work" issue to the DLLR Hearing Examiner so that he could take additional evidence concerning the duration and extent of the claimant's job search.

By decision dated August 8, 2005, the Board affirmed the portion of the DLLR Hearing Examiner's June 14, 2005,

---

4. Long was hired for a full-time job in May of 2005. The record does not reveal the type of job she obtained.

decision in which it was found that the claimant had "good cause" within the meaning of section 8–1005 to refuse STS's job offer.

The DLLR Hearing Examiner, on August 25, 2005, held the remand hearing ordered by the Board.[5] After considering additional testimony, the Hearing Examiner, on August 28, 2005, once again affirmed the decision of the claims specialist that the claimant was able, available, and actively seeking work during the period in question. STS appealed this decision. The Board, by decision dated October 31, 2005, affirmed the August 28 decision of the Hearing Examiner.

STS filed two separate petitions for judicial review in the Circuit Court for Baltimore City. The circuit court rejected STS's contentions in both appeals and affirmed the Board's decisions. This consolidated appeal by STS followed.

## II.

■ The Board's finding of fact that Long turned down STS's offer of employment because it was an offer of a seasonal job—and not a permanent one—was supported by substantial evidence. We therefore may not reject the Board's finding that Long had "good cause" to turn down the job offer unless it is determined that the Board's "good-cause" finding was wrong as a matter of law. *See Thomas v. Dep't of Labor, Licensing and Regulation,* 170 Md.App. 650, 657–58, 908 A.2d 99 (2006); *see also Motor Vehicle Admin. v. Atterbeary,* 368 Md. 480, 490–91, 796 A.2d 75 (2002).

■ We apply the same standards as does the circuit court when reviewing an agency's legal conclusions and accord "a degree of deference" to the agency's construction of the statute that it administers. *See Board of Physician Quality Assur. v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999); *see also*

---

**5.** At the time of the August 25, 2005, hearing, Long was once again unemployed. The reason for her most recent unemployment was not disclosed.

*Maryland Aviation v. Noland,* 386 Md. 556, 571–72, 873 A.2d 1145 (2005).

Sections 8–1005(a) and (b) read, in relevant part, as follows:

(a) *Grounds for disqualification.—*. . . [A]n individual who otherwise is eligible to receive benefits is disqualified from receiving benefits *if the Secretary finds that the individual, without good cause, failed to:*

(1) apply for work that is available and suitable when directed to do so by the Secretary;

(2) *accept suitable work when offered;* or

(3) return to the individual's usual self-employment when directed to do so by the Secretary.

(b) *Determination of suitability.—*(1) In determining whether work is suitable for an individual, the Secretary shall consider:

(i) the degree of risk involved to the health, morals, and safety of the individual;

(ii) the experience, previous earnings, previous training, and physical fitness of the individual;

(iii) the length of unemployment of the individual and the prospects for securing local work in the usual occupation of the individual; and

(iv) the distance of available work from the residence of the individual.

(Emphasis added.)

█ When interpreting a statute like the one here under review, it is important to keep in mind the statute's legislative purpose. What the Court of Appeals said in *Taylor v. Dep't of Employment & Training,* 308 Md. 468, 471–72, 520 A.2d 379 (1987), is therefore relevant, viz.:

*As we have often recognized, Maryland's Unemployment Insurance Law is designed to alleviate the consequences of involuntary unemployment and ease the burden of economic distress. Board of Educ. Mont. Co. v. Paynter,* 303 Md. 22, 491 A.2d 1186 (1985); *Employ. Security Adm. v. Browning–Ferris,* 292 Md. 515, 438 A.2d 1356 (1982); *Sec., Dept.*

*Human Resources v. Wilson,* 286 Md. 639, 409 A.2d 713 (1979); *Saunders v. Unemp. Comp. Board,* 188 Md. 677, 53 A.2d 579 (1947); *[Unemployment] Compensation Board v. Albrecht,* 183 Md. 87, 36 A.2d 666 (1944). To accomplish this important purpose, weekly income benefits are paid to individuals who have become involuntarily unemployed through no fault of their own, and who are otherwise eligible. In determining the scope of the statute and the eligibility of claimants, we have held that the provisions of the Unemployment Insurance Law should be liberally construed to effectuate its legislative intent, and any disqualifying provisions in the remedial statute should be strictly construed. *Saunders v. Unemp. Comp. Board,* 188 Md. at 681–683, 53 A.2d 579 [(1947)].

(Emphasis added.) *See also* section 8–102 (setting forth the legislative findings and policy of Title 8 of the Labor and Employment Article).

About twenty years before *Taylor* was decided, the Court of Appeals, in *Barley v. Maryland Dep't of Employment Sec.,* 242 Md. 102, 110, 218 A.2d 24 (1966), described the purposes of the unemployment compensation statute by quoting at length from *Lowell v. Maine Employment Sec. Comm'n,* 159 Me. 177, 190 A.2d 271 (1963), an opinion authored by Justice Williamson of the Supreme Judicial Court of Maine. The *Barley* court quoted Chief Justice Williamson as follows:

"The purpose of the Employment Security Act was well stated by Justice Brennan, then of the New Jersey Supreme Court and now of the Supreme Court of the United States in *Krauss v. A. & M. Karagheusian, Inc.,* [13 N.J. 447, 100 A.2d 277, 281]:

'The Unemployment Compensation Act provides social insurance, for the common good as well as in the interest of the unemployed individuals, against the distress of involuntary unemployment for those individuals who have ordinarily been workers and would be workers now but for their inability to find suitable jobs. (Cited cases omitted) *The provisions for eligibility and disqualification are purposed to preserve the fund for the payment of*

*benefits to those individuals and to protect it against the claims of others who would prefer benefits to suitable jobs. The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases.'[''}*

*Id.* (emphasis added).

■ As can be seen, the core purpose of the Maryland Unemployment Compensation statute is to provide unemployment benefits to persons who do not have a job through no fault of their own in order to alleviate the consequences of involuntary unemployment. That purpose is advanced by denying benefits to those who are offered suitable work under terms equal to or better than the job the claimant had before benefits were first sought.

■ The term "good cause" is not defined in section 8–1005(a)(2) or elsewhere in Title 8 of the Labor and Employment Article of the Maryland Code. Nor, as far as we have been able to determine, is the term defined in other unemployment compensation statutes enacted in our sister states. Nevertheless, an excellent definition of "good cause" utilized in many instances in states with statutory provisions similar to section 8–1005 is "that which would make an ordinarily reasonable individual follow that procedure in the same or similar circumstances." [6] *Allen v. Unemployment Compensation,* 160 Ohio App.3d 359, 827 N.E.2d 378, 380 (2005).

---

**6.** This Court has defined good cause, albeit in the context of a statute that required that, absent good cause, a written notice of a claim must be presented (to designated agents of municipal corporations) within 180 days after the injury or damage was sustained. *Madore v. Baltimore County,* 34 Md.App. 340, 367 A.2d 54 (1976). We said in *Madore:*

A clear and logical definition of good cause is found in *Lee v. Houston Fire & Cas. Ins. Co.,* 530 S.W.2d 294, 296 (Tex.1975), quoting from the earlier Texas case of *Hawkins v. Safety Casualty Co.,* 146 Tex. 381, 207 S.W.2d 370 (1948). That Court said:

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence *is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of*

In the case at hand, the Hearing Examiner's only justification for his "good cause" determination was expressed as follows:

## EVALUATION OF EVIDENCE

The claimant was not in claim status at the time the employer offered her part time employment in April 2004, at the conclusion of the tax season. The claimant was able, available and actively seeking work following her establishment of an unemployment insurance claim in January 2005. However, when the employer offered the claimant to return to seasonal employment, in January 2005, her refusal of that offer in order to interview for permanent work was made with good cause under Section 8–1005 of the Maryland Unemployment Insurance Law. This precedent has been upheld by the Board of Appeals of the Maryland Department of Labor in the case of *Gallagher v. Goodfriend Temporaries*, 177–BR–82. Although the Hearing Examiner finds that the employer did make timely notice to the Agency of the claimant's refusal of employment in January 2005, this does not change the fact that the claimant had good cause for refusing the employment. Because the claimant has met the eligibility requirements of the law, benefits will be allowed and the benefit determination issued by the Claims Specialist will not be modified.

The Board relied on its own decision in *Gallagher v. Goodfriend Temporaries* (Decision No. 1774–Br–82, decided December 21, 1982), as did the Hearing Examiner. Aside from this reliance, the Board gave no indication as to why it concluded that Long had "good cause" to turn down STS's offer of twelve weeks of full-time employment at a rate of pay $1.50 per hour higher than that received by her when last employed. The Board's full decision reads:

---

diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."
*Id.* at 345, 367 A.2d 54 (emphasis added).

### REVIEW OF THE RECORD

Upon review of the record in this case, the Board of Appeals adopts the findings of fact and conclusions of law of the Hearing Examiner.

In *Gallagher v. Goodfriends Temporaries*, 1774–Br–82, the Board held that where a claimant refused temporary work in order to interview for permanent work, good cause is supported and no penalty is imposed.

### DECISION

It is held that the claimant did not fail without good cause, to accept available, suitable work within the meaning of Maryland Code Annotated, Labor and Employment Article, Title 8, Section 1005. No disqualification is imposed under this section of law. Benefits are allowed.

The decision of the Hearing Examiner is affirmed.

*Gallagher* involved a claimant who had worked for several years for an accounting firm earning $18,000 per annum. She was terminated from that job in August 1980. The Board, in its 1982 Gallagher decision, related what happened next:

The Claimant then worked sporadically for Goodfriend Temporaries between April of 1981 and October of 1981. She was paid $5.25 per hour for this work.

The Claimant then worked as a temporary management consultant from October 24, 1981[,] until March 3, 1982. She made $11.50 per hour at this job.

Goodfriend Temporaries then made several contacts with the Claimant offering her various temporary positions.

On March 16, 1982, Goodfriend Temporaries contacted the Claimant with an offer of a temporary job. The Claimant, however, refused this job because she was interviewing for permanent jobs in Pennsylvania and would not *be available until March 22, 1982.* Goodfriend Temporaries attempted to call the Claimant on April 2, 1982, but did not reach her. On April 5, 1982, Goodfriend Temporaries contacted the Claimant at 10:00 a.m. in the morning for work which would

begin at noon. The Claimant refused the assignment, stating that this was not enough advance notice.

On April 7, 1982, substantially the same thing happened.

On April 7, 1982, the Claimant was called by Goodfriend Temporaries for a temporary position which would begin on April 8, 1982. She refused the job, citing as a reason the fact that the job was to begin on Good Friday. Good Friday, however, occurred on April 9, 1982, not April 8, 1982.

On April 19, 1982, Goodfriend Temporaries called the Claimant concerning a temporary position. The Claimant *stated that she was not available for work which began on the same day as the call.*

(Emphasis added.)

In its *Gallagher* decision, the Board held:

## CONCLUSIONS OF LAW

The question in this case is whether or not the Claimant refused suitable work without good cause, within the meaning of Section 6(d) of the Maryland Unemployment Insurance Law.[7] Clearly, offers of temporary work may be considered to come under Section 6(d) of the statute. These offers, of course, must be considered along with all the surrounding circumstances.

In this case, the work offered from Goodfriend Temporaries paid less than half the previous salary made by the Claimant. In addition, the work being offered was only temporary, and the Claimant had every reason to devote her efforts to finding more permanent and secure work. On the other hand, the Claimant clearly had done this type of work before and did have some type of obligation to accept suitable work when offered to her.

---

**7.** The Unemployment Insurance Law, when the *Gallagher* case was decided, was codified in Article 95A, sections 1–23, of the Maryland Annotated Code (1980 Cum. Supp.).

Considering the offer of March 16, 1982, the Board concludes that the Claimant's reason for refusing temporary work, that she was interviewing in Pennsylvania for a permanent position, is clearly good cause within the meaning of Section 6(d) of the Law.

Concerning April 2, 1982, there is no evidence that the Claimant was ever offered any work on that date.

Concerning April 5, 1982, the Board concludes that the Claimant's reason for refusing the temporary position, i.e.[,] that the position began two hours after the call, was good cause for refusing this type of temporary assignment in these circumstances. The same reasoning applies to the first offer of April 7, 1982.

Concerning the second offer, on April 7, 1982, for work to begin on April 8, 1982, the Board finds that the Claimant's stated reason was not even accurate, in that April 8, 1982[,] was not Good Friday. Refusal of this assignment for this reason is not "for good cause" within the meaning of Section 6(d) of the Law. Considering all of the circumstances, however, the maximum disqualification is not called for in this refusal.

The Board concludes that the call of April 19, 1982, was an offer of suitable work, and that the Claimant's reason did not constitute good cause. The maximum penalty will not be imposed, however, for this refusal either. The Board concludes that *an offer of extremely sporadic temporary stop-gap employment paying less than half the rate of which the Claimant was last employed may be an offer of suitable work,* but this is not a situation in which the maximum penalty should be imposed.

(Emphasis added.)

The DLLR admits in its brief that the *Gallagher* case "is not on all fours" with the case *sub judice.* Nevertheless, according to appellee, the "essential principle" of *Gallagher* was appropriately applied by the Board in the subject case. That "essential principle," according to appellee, is that "refus-

ing temporary work to pursue permanent work amounts to good cause" for refusing suitable work.

The DLLR reads *Gallagher* far too broadly. It must be remembered that the job offered in *Gallagher* was described as "extremely sporadic temporary stop-gap employment paying less than half the rate of [pay earned while] the Claimant was last employed." Here, by contrast, the employment offered can scarcely be characterized as sporadic, temporary, or stop-gap because Long was offered twelve weeks of full-time employment at a higher rate of pay than she had earned at her last job. Moreover, as shown by the portion of the Board's decision in *Gallagher* discussing the claimant's refusal to work on April 8 and April 19, 1982, a claimant seeking permanent employment does not have "good cause" to turn down even stop-gap temporary employment if he or she has no interviews scheduled for the day work is offered. By parity of reasoning, it follows that if a person seeking a full-time job (like Ms. Gallagher), did not have "good cause" to turn down an offer to work on April 8 or April 19, 1982, at half the pay she had previously earned, then Long did not have "good cause" to reject an offer of twelve weeks of steady employment at an increased wage simply because she wanted to obtain permanent, not seasonal, employment.

In the case *sub judice,* the appellee does not contend that the job offered to Long by STS on January 20, 2005, was not "suitable" as that term is used in section 8–1005(b). The reason no such contention is made is evident. An examination of the "suitability" criteria set forth in section 8–1005(b)(i), (ii), and (iv) all lead to the inescapable conclusion that the job Long was offered was suitable. After all, the job was at the same place with the same duties as the last job Long had held. In addition, the criteria set forth in section 8–1005(b)(iii) (the length of unemployment of the claimant and the prospects for securing work in the usual occupation of the individual) also favors a finding of suitability because Long had been seeking permanent work for over four-and-one-half months when STS made its offer of a seasonal job. In this regard, the cases of *Toston v. Indus. Comm'n,* 160 Colo. 281, 417 P.2d 1 (1966),

and *Johnson v. Dist. Unemployment Comp. Bd.,* 408 A.2d 79 (D.C.1979), are of interest.

In *Toston,* the Colorado Supreme Court discussed the statutory factors to be considered in determining whether "suitable" work had been offered. 417 P.2d at 2. Those factors were, in substance, the same as those listed in section 8–1005(b). *Id.* The claimant in *Toston* had been discharged from a full-time job. About two weeks after her termination, she was offered a temporary, thirty-day job by H & R Block. The claimant turned down the job offer on the ground that if she accepted it she would lose the opportunity to obtain permanent employment. One of the questions presented to the Colorado Supreme Court in *Toston* was "whether her refusal to accept the temporary job under the circumstances of this case constituted as a matter of law, a refusal of suitable work or refusal of referral to suitable work within the meaning" of the Colorado statute. *Id.* The *Toston* Court held:

> As applied to the instant case, the temporary job as comptometer operator at H & R Block Co. was not refused by claimant on the grounds that it constituted a measurable degree of risk to her health, safety and morals; nor was the job refused on the ground that it was incompatible with her physical fitness, prior training and experience or prior earnings. Not only did the job require her skills as a comptometer operator, but it also paid 23 cents more per hour than her former wage of $1.60 per hour at Beatrice. *The job, however, was temporary, and, since claimant had been unemployed hardly more than two weeks, she assumed that the prospects of securing permanent work as a comptometer operator were good.* Essentially, the claimant refused as unsuitable a thirty[-]day job for the reason that it would have eliminated her, for that period of time, from the market of suitable permanent jobs which might have been made available to her by the State Employment Office or through her own efforts.
>
> Under these circumstances, claimant's refusal to accept a temporary job, in our view, did not, in and of itself, constitute a refusal to accept suitable work since she was entitled

to *a reasonable time in which to compete in the labor market for available jobs and at a rate of pay commensurate with her prior earnings. Bayly Mfg. Co. v. Department of Employment,* 155 Colo. 433, 395 P.2d 216.

In *Bayly, supra,* the work which was refused was for a wage materially lower than the wage previously earned. Nevertheless, the rationale of that decision applies with equal force to the instant case wherein the claimant is seeking permanent employment but has been offered a temporary position.

Although claimant must be afforded a *reasonable time within which to seek out jobs which are satisfactory to her, the status of jobs which are initially unsuitable does not remain constant. In other words, work which was unsuitable at the beginning of the employment may become suitable when consideration is given to the length of unemployment and the prospects of securing claimant's accustomed work. Hallahan v. Riley,* 94 N.H. 48, 45 A.2d 886 [(1946)].

*Id.* at 2–3 (emphasis added).

In *Johnson,* the claimant had been unemployed for four months when he was offered a two-month temporary job at a rate of pay of approximately fifteen percent lower than at his prior job. 408 A.2d at 80–81. The claimant refused that offer because he was seeking full-time, permanent employment and also because the salary was inadequate. The District of Columbia Court of Appeals rejected the claimant's contention that the temporary work offer was not "suitable" within the meaning of a statute similar to Maryland's. *Id.* at 81–82. The Court said:

*Although a claimant might not initially be expected to take a temporary job, the Board was reasonable in expecting Johnson to do so after four months of unemployment. Compare Toston v. Industrial Commission,* 160 Colo. 281, 417 P.2d 1 (1966) (claimant not required to take a temporary job when only unemployed for a "short time"). It is possible, of course, that under certain circumstances a temporary job might be unsuitable if it would prevent a claimant from

seeking long-term employment. The appeals examiner found, however, that Johnson "could have continued a search for more suitable employment while employed at the [position he was offered]." We agree that there is nothing in the record tending to show that the temporary job ... [offered] would have impaired Johnson's continuing effort to find a permanent employment.

*Id.* at 82 (emphasis added).

As mentioned earlier, there was no evidence that Long could not have continued her internet search for a full-time, permanent job if she had accepted the seasonal work offered by STS. The evidence affirmatively showed that, during all times here relevant, Long did all of her job search via the internet. It is obvious that she could have continued this search, either before or after working hours, while continuing to be employed, on a seasonal basis, at STS.

Because the work offered to Long was "suitable," the question becomes: Did Long have "good cause" to turn down STS's job offer? In this regard, we have considered cases from other jurisdictions and have found none where the court has held that the fact that the claimant, in good faith, sought full-time, permanent work amounted to "good cause" to reject an offer of suitable, albeit seasonal, employment. Most courts have adopted the rule that to be eligible for unemployment benefits, "a claimant must offer his or her services unequivocally to the labor market," and therefore, the duty to accept suitable work exists regardless as to whether the offered work is temporary or permanent. *See* 81 C.J.S. *Social Security and Public Welfare,* § 447, and cases therein cited.

The two cases most closely on point are *Norland v. Iowa Dep't of Job Serv.,* 412 N.W.2d 904 (Iowa 1987), and *Wacaster v. Daniels,* 270 Ark. 190, 603 S.W.2d 907 (Ct.App.1980).

The claimant in *Norland* had been employed by a bank for approximately eighteen months when she was placed on disability leave due to a medical problem. 412 N.W.2d at 906. On September 12, 1983, after being on leave for approximately six weeks, claimant's physician released her to return to her

job, and she did so. *Id.* After only two days, however, the claimant's employer asked her to take a thirty-day leave of absence because it felt that she had not recovered sufficiently from her medical problems. The claimant took the leave of absence as requested, but at the end of her leave she was told that the job she had been performing previously had been filled and that no other work was available. *Id.* Nevertheless, three days later the bank offered the claimant a temporary position that was similar to, and at the same wage as, her original job. The temporary position was expected to last only six weeks, however. *Id.* at 907. The claimant turned down the job offer because it was "of a temporary nature" and because it might interfere with her ability to accept other work. *Id.*

The claimant in *Norland* applied for unemployment compensation, but she was disqualified from benefits because, in the opinion of the Iowa Department of Job Services, she had refused to accept "suitable work" without "good cause." *Id.* at 907, 911–12. The *Norland* Court upheld the decision of the Department of Job Services, saying:

> *Lack of Good Cause.* Norland also argues there was not substantial evidence to support a finding that she refused the offered work, if it was suitable, without good cause. While she is correct that suitable work may be refused with good cause, *see* Iowa Code § 96.5(3), we disagree [with the argument that] the department's implicit decision on this issue was unsupported by substantial evidence.
>
> "Good cause for refusing work must involve circumstances which are real, substantial, and reasonable, not arbitrary, immaterial, or capricious." *Mangan v. Bernardi,* 131 Ill. App.3d 1081, 1084, 87 Ill.Dec. 412, 415, 477 N.E.2d 13, 16 (1985). Norland contends her refusal of the offered work fits this definition because it was uncontradicted that she was, in good faith, seeking permanent work. This argument must be rejected, first, because *it makes no sense to say there is good cause to refuse one type of suitable work— albeit temporary—in order to seek another type of suitable*

*work.* Norland's justification for refusing the offered job is simply not substantial.

*Id.* at 914 (emphasis added).

The claimant in *Wacaster* was employed as an assistant librarian until the end of 1979. 603 S.W.2d at 908. She received a monthly salary of $560 up until December 31, 1979, when she was terminated through no fault on her part. Early in 1980, the claimant made application for unemployment insurance benefits. Shortly thereafter, she was offered a position as an assistant librarian by her former employer. The job offered was temporary and required her to work three-and-one-half hours per week more than she had previously worked, but her weekly salary was to remain the same. *Id.* at 910–11. The issue presented to the *Wacaster* Court was: Did the claimant refuse, without good cause, the position offered? *Id.* at 910. The Court answered that question in the affirmative and explained:

> The only condition that warrants a claimant from accepting offered employment is for good cause as expressed in the applicable statutory provision. While the term "good cause" may be difficult to define, it seems plain that the *term means a justifiable reason for not accepting the particular job offered.* In other words, to constitute good cause, the reason for refusal must not be arbitrary or capricious and the reasons must be connected with the work itself. While personal factors may be considered in determining whether there is good cause, they are not controlling or dispositive of the issue. *See* 81 C.J.S. Social Security § 255, p. 508. In the final analysis, the question of what is good cause must be determined in the light of the facts in each case.
>
> While it is true that claimant, under the temporary position, would have been required to work an additional three and one-half hours per week or fourteen additional hours per month and would have received the same salary that she received previously, plus a 7% cost of index raise or $39.20 increasement [sic] per month, we hold that there is a relatively insignificant differential in the increasement in the

number of hours and the salary that she would have received under the temporary employment when contrasted with the working conditions of her previous position.

Under the temporary assignment, claimant would have been doing essentially the same type of work that she had done previously for the same employer; the position did not necessitate a change in residence or involve a greater distance to travel.

*Claimant is required, under the law, to be available for work whether temporary or full-time in order to receive benefits.* She has the burden of proof to show that she has met the conditions of unrestricted availability for work. It is clear that a claimant may not restrict his availability to certain hours, types of work or other conditions not usual or customary in the particular trade. *See* 76 Am.Jur.2d, Unemployment Compensation, § 68, p. 970.

*Id.* at 910–11 (emphasis added).

In *In re Corcoran,* 304 A.D.2d 969, 759 N.Y.S.2d 210 (N.Y.App.Div.2003), the Court reached a result similar to that reached in *Norland* and *Wacaster.* The claimant was employed by an agency that located temporary and permanent employment for its clients. The employer assigned claimant a job as a temporary school secretary, and the job was accepted. After this assignment ended, the claimant rejected the employer's offer of another temporary secretarial position on the grounds that acceptance of temporary work would interfere with her efforts to find permanent employment. *Id.* Within a week of rejecting the job offer, the claimant applied for and received unemployment insurance benefits after she certified that she had not refused a job offer during the previous week. *Id.* The Unemployment Appeals Board of New York ruled that the claimant was disqualified from receiving unemployment insurance benefits on the ground that she had refused an offer of suitable employment without good cause. *Id.* The *Corcoran* Court upheld the Board's determination and, in doing so, said:

*It is well settled that a claimant's efforts to obtain full-time employment do not constitute good cause for refusing an*

*offer of temporary employment and that a refusal thereof may disqualify a claimant from receiving benefits (see Matter of Ruggieri [Commisioner of Labor], 273 A.D.2d 723, 724[, 709 N.Y.S.2d 713 (2000)]; Matter of Zimmerman [Commissioner of Labor], 252 A.D.2d 648, 675 N.Y.S.2d 209, appeal dismissed 92 N.Y.2d 1025, 684 N.Y.S.2d 487, 707 N.E.2d 442) [(1998)].* Claimant attempts to excuse her disqualifying actions and willful false statements on the ground that she was ignorant of the relevant provisions of the Labor Law. As claimant admitted in her hearing testimony that she received the unemployment insurance information handbook, she cannot persuasively argue that she was ignorant of the requirements applicable to her situation (*see Matter of Karpien [Commissioner of Labor], 297 A.D.2d 855, 856[, 748 N.Y.S.2d 41 (2002)]; Matter of Sulyok [Commissioner of Labor], 293 A.D.2d 803, 804[, 739 N.Y.S.2d 496 (2002)]).* Substantial evidence supports the Board's ruling that claimant was disqualified from receiving benefits and that the benefits paid to her were recoverable; hence, its decision will not be disturbed.

*Id.* (emphasis added).

■ We hold that under the circumstances of this case an ordinarily reasonable individual would not have turned down the offer of seasonal employment made by STS. Crucial to our decision in this regard is the fact that Long was offered a "suitable job." The job duties were exactly the same as the position she had last held before she became unemployed— and the pay was better. We shall therefore reverse the judgment entered in the circuit court that upheld the Board's decision that Long had "good cause" to reject the offer made by STS on January 20, 2005.[8] If the Board had applied section 8–1005 properly, it should have ruled that the claim-

---

8. We reach the conclusion that "good cause" did not exist in this mindful of the fact that we are to give "due deference" to the interpretation of the unemployment claims statute. Nevertheless, "due deference" does not require us to "rubber stamp" a clearly erroneous legal decision made by an agency.

ant's refusal to accept STS's offer disqualified her from receipt of benefits for the period set forth in section 8–1005(c).[9]

JUDGMENTS OF THE CIRCUIT COURT FOR BALTI- MORE CITY REVERSED WITH INSTRUCTIONS TO REMAND THE CASE TO THE BOARD OF APPEALS FOR THE ENTRY OF AN ORDER CONSISTENT WITH THE VIEWS EXPRESSED HEREIN; COSTS TO BE PAID BY APPELLEE.

_____

9. Section 8–1005(c) reads:

(c) *Duration of disqualification.*—A disqualification under this sec- tion:

(1) shall be effective beginning with the latest week in which the individual:

(i) was to have applied for work at the direction of the Secretary;

(ii) was notified that suitable work had become available to the individual; or

(iii) was to return to the usual self-employment of the individual at the direction of the Secretary; and

(2) shall continue:

(i) for a total of at least 5 but not more than 10 weeks; or

(ii) until the individual is reemployed and has earned wages for covered employment that equal at least 10 times the weekly benefit amount of the individual.